M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
916.823.6955 (Tel)
206.441.9711 (Fax)
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

Heather M. Lopez (SBN 354022)
Mike Acciavatti*
**MILBERG PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Phone: (331) 240-3015
*hlopez@milberg.com*
*macciavatti@milberg.com*

**pro hac vice forthcoming*

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WILLIAM F. SCHMIERER, MARK AUSSEIKER, ELZY LINDER, JOHN HOPTON and MICHAEL J. HARHAY,** individually and on behalf of all others similarly situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>**HOME DEPOT U.S.A., INC.,** a Delaware Corporation and **THE HOME DEPOT, INC.,** a Delaware Corporation.<br><br>Defendants. | Case No. 3:26-cv-03967<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **VIOLATION OF CALIFORNIA'S ALPR PRIVACY ACT, CAL. CIV. CODE §§ 1798.90.5, *ET SEQ.* — UNAUTHORIZED ACCESS AND USE OF ALPR INFORMATION;**<br>2. **VIOLATION OF CALIFORNIA'S ALPR PRIVACY ACT — FAILURE TO IMPLEMENT CODE-COMPLIANT PRIVACY POLICY AND MAINTAIN RECORD OF ACCESS, CAL. CIV. CODE §§ 1798.90.51(B), 1798.90.52, 1798.90.53(B);**<br>3. **INVASION OF PRIVACY UNDER CALIFORNIA CONSTITUTION, ARTICLE I, § 1;**<br>4. **INTRUSION UPON SECLUSION;** |

- 1 -

**CLASS ACTION COMPLAINT**

5. **VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*;**
6. **NEGLIGENCE and NEGLIGENCE PER SE; and**
7. **VIOLATIONS OF CALIFORNIA CONSUMER PRIVACY ACT / CALIFORNIA PRIVACY RIGHTS ACT CAL. CIV. CODE §§ 1798.100, *ET SEQ.***

**DEMAND FOR JURY TRIAL**

Plaintiffs William F. Schmierer, Mark Ausseiker, Elzy Linder, John Hopton and Michael J. Harhay ("Plaintiffs") bring this Class Action Complaint against Defendants Home Depot U.S.A., Inc. and The Home Depot, Inc. (collectively, "Home Depot" or "Defendants"), individually and on behalf of all others similarly situated, and allege upon personal knowledge and their counsel's investigations as follows:

## I.    INTRODUCTION

1. Plaintiffs seek to hold Defendants responsible for their illegal, secretive, invasive, and negligent use of automated license plate recognition ("ALPR") cameras and the storage and use of Private Information captured or generated from ALPR operations.

2. Defendants are the world's largest home improvement retailer, operating over 2,300 retail stores in the United States across all fifty (50) states. California is Home Depot's largest single-state market, with 233 stores, approximately 12% of Home Depot's entire U.S. store footprint. For fiscal year 2025, Home Depot reported total consolidated sales of approximately $164.7 billion, and net earnings of approximately $14.2 billion.

3. America's largest home improvement retailer is running a covert surveillance operation in its parking lots. Home Depot U.S.A., Inc. and The Home Depot, Inc. operate 233 retail

- 2 -
**CLASS ACTION COMPLAINT**

stores across California, more than in any other state[1], and have installed, primarily through their ALPR vendor Flock Group, Inc., d/b/a Flock Safety ("Flock"), at the entrances and exits of their parking lots of their California stores. These cameras capture the license plate, make, model, color, and distinguishing features of every vehicle entering Home Depot's properties, log that data with precise timestamps and location information, and feed it into a centralized, searchable database accessible to law enforcement agencies across the country.

4.      Home Depot did this secretly. Home Depot installed and operates its ALPR surveillance infrastructure at its California stores while maintaining an ALPR-specific usage and privacy policy so deficient it fails to satisfy at least three of the statute's seven mandatory elements, including: (a) no identified custodian title responsible for the ALPR system; (b) no defined retention period, only the circular and legally meaningless "as long as necessary" language; and (c) an open-ended law enforcement sharing clause that authorizes sharing in connection with "enforcement of laws and regulations," with no meaningful restriction on federal agencies, out-of-state agencies, or immigration enforcement. Every day, the vehicles, and the movements, habits, and lives of California residents shopping at Home Depot are being covertly captured and funneled into a national surveillance network, with or without notice sufficient to satisfy California law.

///

///

///

---

[1] *The Home Depot Store Directory — California*, homedepot.com/l/CA (last visited Mar. 24, 2026); *ScrapeHero, Number of The Home Depot locations in the USA in 2025*, scrapehero.com (2025) (confirming 233 CA stores).

**CLASS ACTION COMPLAINT**

*Figure 1: Flock Safety ALPR camera at a California Home Depot store parking entrance on March 24, 2026. Home Depot's ALPR system captures the vehicle data of Californians and feeds it into a national law enforcement database accessible to federal agencies.*

5. California enacted the ALPR Privacy Act (Cal. Civ. Code §§ 1798.90.5, *et seq.*) (the "ALPR Act" or "Act") precisely to prevent this kind of covert, large-scale surveillance of ordinary Californians going about their daily lives. The Act imposes clear obligations on ALPR "operators" and "end-users," including private commercial entities like Home Depot, to maintain and publicly post a detailed usage and privacy policy, maintain reasonable security procedures, maintain audit logs of system access, and restrict the sharing of ALPR data. Home Depot has failed to satisfy multiple mandatory requirements of the Act.

6. The California Court of Appeal, in *Bartholomew v. Parking Concepts, Inc.*, No. A171546, decided February 5, 2026, confirmed that Defendants' conduct constitutes "harm" within the meaning of the ALPR Act. The court held that "collecting and maintaining individuals' ALPR information without implementing and making public the statutorily required policy harms these individuals by violating this right to know." No showing of affirmative misuse of data is required. Failure to implement and publicly post the required policy, or posting a policy that fails to include every mandatory element, is itself the harm.

- 4 -
**CLASS ACTION COMPLAINT**

7.      Beyond the statutory violation, Home Depot's conduct is gravely dangerous. Home Depot configured, or permitted its ALPR vendor to configure, its systems to give law enforcement agencies the ability to query the ALPR database and receive automated alerts whenever a vehicle of interest enters a Home Depot store. Home Depot's ALPR feeds at its California stores flow into a national ALPR network that collects more than 20 billion license plate reads per month, accessible to law enforcement agencies across the country, including federal agencies. Public records obtained by the Electronic Frontier Foundation from the Johnson County, Texas Sheriff's Office confirm that the Sheriff's Office was able to tap into Flock cameras "at dozens of Home Depot stores within Texas"[2], the same national network architecture used at California stores. Documented instances confirm the same network has been used for civil immigration enforcement, First Amendment protest surveillance, and access by federal agencies including ICE, ATF, Air Force installations, and the GSA Office of Inspector General.

8.      Plaintiffs bring this class action on behalf of themselves, and all similarly situated individuals whose vehicles were captured by ALPR systems at Home Depot's California stores during the class period. Plaintiffs seek statutory damages of not less than $2,500 per person harmed, punitive damages, injunctive relief, and attorneys' fees as provided by the ALPR Act and the California Unfair Competition Law (Bus. & Prof. Code §§ 17200, *et seq.*)(the "UCL").

## II.      PARTIES

9.      Plaintiff William F. Schmierer is a natural person, resident, and citizen of Orangevale, California.

10.     Plaintiff Mark Ausseiker is a natural person, resident, and citizen of Fair Oaks, California.

11.     Plaintiff Elzy Linder is a natural person, resident, and citizen of Fair Oaks, California.

---

[2] Joseph Cox & Jason Koebler, *ICE Taps into Nationwide AI-Enabled Camera Network, Data Shows,* 404 MEDIA (May 27, 2025), https://www.404media.co/ice-taps-into-nationwide-ai-enabled-camera-network-data-shows

**CLASS ACTION COMPLAINT**

12.    Plaintiff John Hopton is a natural person, resident, and citizen of Huntington Beach, California..

13.    Plaintiff Michael J. Harhay is a natural person, resident, and citizen of Lafayette, California.

14.    Defendant Home Depot U.S.A., Inc. is a corporation formed under the laws of Delaware with its principal place of business at 2455 Paces Ferry Road NW, Atlanta, Georgia 30339. Home Depot U.S.A., Inc. is the primary operating subsidiary of The Home Depot, Inc. and is the entity that owns and operates Home Depot's retail store locations in the United States, including all California locations.

15.    Defendant The Home Depot, Inc. is the publicly traded parent corporation of Home Depot U.S.A., Inc., incorporated in Delaware with its principal place of business at 2455 Paces Ferry Road NW, Atlanta, Georgia 30339.

### III.    JURISDICTION AND VENUE

16.    This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action involving more than 100 putative class members and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Minimal diversity is established because Plaintiffs are citizens of states different than Defendants.

17.    This Court has general personal jurisdiction over Defendants because Defendants conduct substantial business in California.

18.    Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District, and the Defendants conduct substantial business in this District.

///

///

///

- 6 -
**CLASS ACTION COMPLAINT**

## IV.    FACTUAL ALLEGATIONS

**I.    ALPR TECHNOLOGY AND CALIFORNIA'S ALPR PRIVACY ACT**

19.    Modern ALPR technology uses specialized cameras and software to automatically scan, record, and convert vehicle license plates into digital data.[3] These systems are mounted at fixed, high-traffic locations and scan every vehicle that passes. ALPR cameras capture images of license plates using Optical Character Recognition ("OCR") technology to convert images into machine-readable text in real time. While each camera captures one point in time, data from multiple cameras is merged to track and map a vehicle's movements across entire regions at all hours of the day, every day of the year.



*Figure 2: Illustration of a Flock Safety ALPR system capturing vehicle data*
*at a retail parking lot entrance and uploading it to a centralized, law-enforcement-accessible*
*national database.*

20.    When ALPR data is aggregated, it "can paint an intimate portrait of a driver's life and even chill First Amendment protected activity. ALPR technology can be used to target drivers who visit sensitive places such as health centers, immigration clinics, gun shops, union halls, protests, or

---

[3] ALPR camera technology is distinguishable from a standard traffic camera. Traffic cameras only record specific violations at a single point in time. In contrast, ALPRs are always recording, documenting, and uploading information into a centralized data store, capturing all vehicles that pass by. *See* Mario Lotmore, *Somebody's watching me: Flock versus red light cameras in Lynnwood*, LYNNWOOD TIMES (Nov. 10, 2025), https://lynnwoodtimes.com/2025/11/10/ red-light. (last visited, Mar. 29, 2026).

**CLASS ACTION COMPLAINT**

centers of religious worship."[4] This concern is not theoretical, through analysis of twelve million searches logged across Flock's national network between December 2024 and October 2025, the EFF confirmed that more than 50 federal, state, and local agencies ran hundreds of searches through Flock's national network in connection with protest activity, using search terms such as "protest," "No Kings,"[5] and protest-specific vehicle descriptions.

21.    The California Legislature recognized the dangers of ALPR technology in 2015, enacting Senate Bill 34 (the "ALPR Act"), codified at Cal. Civ. Code §§ 1798.90.5, *et seq.*, to "put in place minimal privacy protections by requiring the establishment of privacy and usage protection policies for ALPR operators and end-users." The Legislature noted: "The collection of a license plate number, location, and time stamp over multiple time points can identify not only a person's exact whereabouts but also their pattern of movement. Unlike other types of personal information that are covered by existing law, civilians are not always aware when their ALPR data is being collected."[6]

22.    The ALPR Act mandates that both "operators" of ALPR technology and "end-users" who access ALPR data adhere to the following fundamental requirements (Cal. Civ. Code §§ 1798.90.51, 1798.90.53):

   a.  *The Security Requirement:* Both ALPR operators and end-users must "maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized

---

[4]  Jennifer Pinsof et al., Letter to Att'y Gen. Rob Bonta, Off. of the Att'y Gen., Cal. Dep't of Just., at 2 (Jan. 31, 2024) [hereinafter EFF–ACLU Joint Letter], https://www.eff.org/files/2024/01/30/2024-01-31_letter_to_ag_bonta_re_ sb_34_final.pdf (citing *Automatic License Plate Readers,* ELEC. FRONTIER FOUND. (Mar. 29, 2023), https://sls.eff.org/technologies/automated-license-plate-readers-alprs; *You Are Being Tracked: How License Plate Readers Are Being Used to Record Americans' Movements,* ACLU (July 2013), https://www.aclu.org/you-are-being-tracked). (last visited, Mar. 29, 2026).

[5]  *First Amendment Report,* HAVE I BEEN FLOCKED?, https://haveibeenflocked.com/first-amendment-records?sort=date:desc (last visited Feb. 19, 2026). *See also* Rindala Alajaji & Dave Maass, *License Plate Surveillance Logs Reveal Racist Policing Against Romani People,* ELEC. FRONTIER FOUND. (Nov. 3, 2025), https://www.eff.org/deeplinks/2025/11/license-plate-surveillance-logs-reveal-racist-policing-against-romani-people (last visited, Mar. 29, 2026).

[6]  S. Comm. on Transp. and Hous., Bill Analysis, S.B. 34, ¶ 3 (Cal. 2015) [hereinafter SB 34 Bill Analysis].

**CLASS ACTION COMPLAINT**

access, destruction, use, modification, or disclosure." §§ 1798.90.51(a); 1798.90.53(a).

    b. *The Privacy/Policy Requirement*: Both ALPR operators and end-users must "implement a usage and privacy policy in order to ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties." §§ 1798.90.51(b)(1); 1798.90.53(b)(1).

    c. *The Notice/Content Requirement*: The usage and privacy policy must be posted "conspicuously" on the operator's or end-user's website and must include, at a minimum: (i) authorized purposes for ALPR collection; (ii) descriptions of authorized personnel and training requirements; (iii) how the system will be monitored for security and legal compliance; (iv) the purposes of, process for, and restrictions on the sale, sharing, or transfer of ALPR information; (v) the title of the official ALPR custodian; (vi) reasonable accuracy measures; and (vii) the length of time ALPR information will be retained and the manner in which it will be destroyed. §§ 1798.90.51(b)(2)(A)–(G); 1798.90.53(b).

23. ALPR operators must also comply with two additional requirements under Cal. Civ. Code § 1798.90.52:

    a. *The Audit Requirement*: ALPR operators must maintain a record of each time the ALPR system is accessed, including the date and time, data queried, identity of the querying party, and purpose of the query. § 1798.90.52(a).

    b. *The Proper Use Requirement*: ALPR operators must require that ALPR information only be used for the authorized purposes described in the usage and privacy policy. § 1798.90.52(b).

24. The ALPR Act's private right of action is found at Cal. Civ. Code § 1798.90.54, which provides that any "individual who has been harmed by a violation of this title, including unauthorized access to or use of ALPR information," may bring a civil action against "a person who knowingly

**CLASS ACTION COMPLAINT**

caused the harm" and recover: (1) actual damages, but not less than liquidated damages of $2,500; (2) punitive damages upon proof of willful or reckless disregard of the law; (3) reasonable attorneys' fees and litigation costs; and (4) other preliminary and equitable relief as the court deems appropriate.

## II.    HOME DEPOT'S ENTERPRISE ALPR SURVEILLANCE NETWORK

25.    The Home Depot, Inc. and its operating subsidiary Home Depot U.S.A., Inc. constitute the world's largest home improvement retailer. As of the end of fiscal year 2025, Home Depot operated 2,359 retail stores across all 50 states. California is Home Depot's largest single-state market, with 233 stores, approximately 12% of Home Depot's entire U.S. store footprint. For fiscal year 2025, Home Depot reported total consolidated sales of approximately $164.7 billion, and net earnings of approximately $14.2 billion.

26.    Home Depot entered into an enterprise vendor relationship with Flock Safety for the deployment of ALPR cameras across its store portfolio, including at its California locations. Public records obtained by the Electronic Frontier Foundation from the Johnson County, Texas Sheriff's Office, published by 404 Media on August 5, 2025, confirmed that the Sheriff's Office has access to tap into "Flock cameras and gunshot-detecting microphones at dozens of Home Depot stores within Texas."[7] The same Flock national network architecture that connects Home Depot's Texas stores to law enforcement agencies runs identically at Home Depot's California locations.

27.    The KPBS investigative report on San Diego County ALPR networks (November 20, 2025) independently confirmed that Home Depot is among the private businesses in California that "give police access to their license plate readers," and that these "private systems effectively serve as a wide-ranging extension of law enforcement's surveillance apparatus, even though the private businesses are not subject to the same public scrutiny and transparency requirements." KPBS specifically compared Home Depot's ALPR policy to Lowe's and concluded that "Home Depot's policy is very similar," describing a policy that nominally acknowledges ALPR use but provides no meaningful disclosure of law enforcement sharing arrangements, no defined retention period, and no

---

[7] Joseph Cox & Jason Koebler, *ICE Taps into Nationwide AI-Enabled Camera Network, Data Shows,* 404 MEDIA (Aug. 5, 2025), https://www.404media.co/ice-taps-into-nationwide-ai-enabled-camera-network-data-shows (last accessed Mar. 29, 2026).

**CLASS ACTION COMPLAINT**

custodian title.[8] The public is not effectively on notice that Home Depot is surveilling them and reporting that surveillance to others.

28.    Publicly confirmed Flock ALPR deployments at California Home Depot locations include at minimum:

a.    **Goleta (Santa Barbara County):** Three Flock ALPR cameras confirmed in the Home Depot parking lot at the Camino Real Marketplace, Goleta, California, as documented by community members and reported in local coverage in November 2025[9];

b.    **Fresno (Fresno County):** Flock ALPR cameras confirmed in the "West Shaw Home Depot / PetSmart parking lot," documented in community discussion in October 2025;[10]

c.    **Texas Confirmed, California Architecture Identical:** The EFF/404 Media records confirming Home Depot's Flock deployments in Texas, with law enforcement access enabled, reflect the same enterprise-level Flock deployment model deployed identically at Home Depot's California stores.

29.    Flock markets its ALPR product as a "digital neighborhood watch" and "end-to-end safety-as-a-service" solution. Flock's national network collects more than 20 billion license plate reads per month.[11] Flock's database is searchable across thousands of networks simultaneously: in

---

[8] Scott Rodd & Gustavo Solis, *San Diego County Police Agencies Access Many Private License Plate Readers with Minimal Oversight,* KPBS (Nov. 20, 2025), https://www.kpbs.org/news/public-safety/2025/11/20/san-diego-county-police-agencies-access-many-private-license-plate-readers-with-minimal-oversight (last visited Mar. 17, 2026)

[9] Community documentation and local coverage of Flock cameras at Camino Real Marketplace Home Depot, Goleta, California (Nov. 2025). *See* discussion at Reddit r/SantaBarbara post, Nov. 18, 2025, reddit.com/r/SantaBarbara /comments/1p0hxne/.

[10] Community documentation of Flock cameras at West Shaw Home Depot/PetSmart parking lot, Fresno, California (Oct. 2025). *See* Reddit r/Fresno post, Oct. 9, 2025, reddit.com/r/fresno/comments/1o2lmb6/.

[11] Thomas Brewster, *Flock's AI Cameras Are Watching Cars All Over America. They're About to Get Smarter*, Forbes (June 4, 2025). (last visited Mar. 25, 2025); *See also License Plate Readers (LPR): Stop Crime in Its Tracks with Evidence That Drives Action,* FLOCK SAFETY, https://www.flocksafety.com/products/license-plate-readers [https://perma.cc/RZU8-K5HG] (last visited Feb. 20, 2026) [hereinafter Flock License Plate Readers]

**CLASS ACTION COMPLAINT**

documented Flock audit records, law enforcement agencies have searched as many as 6,511 networks and tens of thousands of devices in a single query.[12] Home Depot's affirmative decision to connect its California ALPR feeds to Flock's national network is a corporate, enterprise-level choice, not a vendor default, that makes every shopper's vehicle data available to hundreds of law enforcement agencies simultaneously, in real time.

30.    At each Home Depot California store where Flock cameras are deployed, cameras are mounted at parking lot entrances and exits. In some cases, drivers who are not destined for Home Depot are also recorded. For example, the parking lot for numerous other retail stores in the Broadstone Plaza, adjacent to the Folsom Home Depot, is accessible through the Home Depot parking lot. Those drivers are recorded by two separate ALPR devices.

31.    Every vehicle is automatically photographed, and its license plate number, make, model, color, timestamp, and precise location are logged into a centralized, searchable database accessible to law enforcement. Home Depot gave law enforcement agencies, including, on information and belief, agencies in each California county where its stores are located, the ability to query the database and receive automated alerts whenever a vehicle on a law enforcement hot list enters a Home Depot store.

///

///

///

---

[12] Dave Maass & Rindala Alajaji, *License Plate Surveillance Logs Reveal Racist Policing Against Romani People,* ELEC. FRONTIER FOUND. (Nov. 3, 2025), https://www.eff.org/deeplinks/2025/11/license-plate-surveillance-logs-reveal-racist-policing-against-romani-people*, (*last visited Mar. 29, 2026); *See also Javorsky & Mayor v. Flock Group, Inc.*, No. CGC-26-634334 (Cal. Super. Ct. S.F. Cty., filed Feb. 26, 2026), Complaint ¶¶ 23–25 (citing EFF analysis of Flock audit logs).

**CLASS ACTION COMPLAINT**



*Figure 3: Flock Safety ALPR camera at the California Home Depot store located in Folsom, CA. Shoppers and other passers-by receive no adequate notice under California law that their license plate data is being captured, stored, and shared with law enforcement agencies across the country.*

## III.     PLAINTIFFS' ALPR DATA HAS ECONOMIC VALUE

32.     Every day, commercial entities purchase data about individuals, including location history, from data brokers and other sources to run targeted advertisements and tailor services. The data Flock captures, including license plate numbers, vehicle characteristics, precise timestamps, and GPS-tagged location information, is precisely the kind of commercially valuable data that data brokers seek, aggregate, and sell.

33.     ALPR data, when aggregated and fused with data from other sources, reveals detailed information about an individual's purchasing decisions, lifestyle, associates, and interests. Flock itself developed its "Nova" product specifically to fuse ALPR data with information from data brokers, credit reporting agencies, and other external sources, including, according to reporting by 404 Media, stolen personal information from data breaches found on the dark web, to generate richer profiles of individuals and their vehicles.[13] This commercial fusion function confirms that the data captured at Home Depot's California stores has measurable economic value to Plaintiffs and class members.

34.     The economic value of Plaintiffs' ALPR data, and each class member's interest in controlling the dissemination of that data, has been diminished by Home Depot's failure to implement

---

[13] Joseph Cox, *License Plate Reader Company Flock Is Building a Massive People Lookup Tool, Leak Shows,* 404 MEDIA (May 14, 2025), https://www.404media.co/license-plate-reader-company-flock-is-building-a-massive-people-lookup-tool-leak-shows.

**CLASS ACTION COMPLAINT**

a fully compliant ALPR usage and privacy policy, its unrestricted sharing of that data with law enforcement, and its failure to prevent its vendor from secretly re-enabling nationwide data access. Plaintiffs' data was taken from them without the disclosures California law requires, and without the restrictions on use that a compliant policy would have imposed.

**IV.    HOME DEPOT'S ALPR POLICY FAILS TO SATISFY CALIFORNIA LAW**

35.    Home Depot maintains an ALPR-specific usage and privacy policy, available on its website at homedepot.com. However, this policy is non-compliant with Cal. Civ. Code §§ 1798.90.51(b) and 1798.90.53(b) in multiple material respects. A policy that does not include every mandatory element required by the statute is a non-compliant policy. Under *Bartholomew v. Parking Concepts, Inc.*, No. A171546 (Cal. Ct. App. 1st Dist. Feb. 5, 2026), as modified Feb. 27, 2026,[14] the court expressly declined to hold that a partially compliant policy avoids liability, leaving open the argument that a policy missing mandatory elements causes the same harm as no policy at all.

///

///

///

---

[14] *Bartholomew v. Parking Concepts, Inc.,* No. A171546, slip op. (Cal. Ct. App. 1st Dist. Feb. 5, 2026), as modified Feb. 27, 2026 ("We express no opinion as to whether collecting and maintaining ALPR information with a usage and privacy policy that does not include every component identified in section 1798.90.51, subdivision (b)(2) would also cause such harm.").

**CLASS ACTION COMPLAINT**

36.    Home Depot's ALPR policy states, in its entirety:[15]

## Automated License Plate Recognition ("ALPR") Usage and Privacy Policy

We may use ALPR Systems where not prohibited by law and in accordance with our Privacy and Security Statement. For purposes of this ALPR Usage and Privacy Policy, the following definitions apply:

- "ALPR System" means a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of license plates and the characters they contain into computer-readable data.
- "ALPR Information" means information or data collected by an ALPR System.

We may collect and use ALPR Information for fraud prevention, security, and asset protection purposes ("Authorized Purpose").

Select associates and independent contractors with an Authorized Purpose, including, those in our security, asset protection, information technology, and legal departments ("Authorized Personnel") will be authorized to use or access the ALPR System or collect ALPR Information. Select asset protection associates are responsible for implementing this ALPR Usage and Privacy Policy. Authorized Personnel will undergo training on the appropriate access and use of ALPR Systems and ALPR Information in compliance with applicable privacy and security laws.

To ensure the security of ALPR Information and our compliance with applicable privacy and security laws, we will maintain and periodically check our ALPR System access records.

In accordance with our Privacy & Security Statement, we will not sell, share, or transfer ALPR Information to a third party outside The Home Depot nor allow a third party to use or access our ALPR System, except in limited circumstances, including:

- To our service providers so that they may perform services on our behalf; however, we may permit these service providers to use ALPR Information that has been anonymized and aggregated for the improvement of their services; and
- For the purposes of (1) ensuring the safety and security of our customers, associates and third parties, (2) protecting our rights and property and the rights and property of our customers, associates and third parties, (3) complying with laws and regulations, and cooperating with law enforcement related to enforcement of laws and regulations, or (4) satisfying other legal requirements.

To identify and correct data errors, Authorized Personnel will periodically compare license plate readings recorded and license plate images captured by the ALPR System.

In accordance with our Privacy & Security Statement, we will retain ALPR Information for as long as necessary for the Authorized Purposes and regularly destroy ALPR Information when we determine its retention is no longer necessary, unless we are informed that we must retain the ALPR Information to comply with legal processes or to satisfy other legal requirements.

If you have questions about this ALPR Usage and Privacy Policy, please send an email to privacy@homedepot.com.

*Figure 4: Home Depot's ALPR Usage and Privacy Policy as posted on homedepot.com.*
*The policy fails to identify any custodian title, provides no defined data retention period, and contains an open-ended law enforcement sharing clause authorizing cooperation with 'enforcement of laws and regulations' with no restriction on federal agencies or immigration enforcement.*

29.    Home Depot's decision to publish an ALPR-specific usage and privacy policy does not insulate it from liability. A policy that omits mandatory elements is not a compliant policy. The California ALPR Act does not provide that partial compliance satisfies the statute; it requires that operators "implement a usage and privacy policy" that "include[s], at a minimum" each of the seven specific elements enumerated at Cal. Civ. Code § 1798.90.51(b)(2)(A)–(G). *See* Cal. Civ. Code § 1798.90.51(b)(2) (policy "shall include, at a minimum" each listed element). A policy that omits

---

[15] Home Depot ALPR Usage and Privacy Policy, available at homedepot.com (last visited Mar. 24, 2026). A screenshot of this policy as it appeared on the filing date is attached hereto as Exhibit A.

**CLASS ACTION COMPLAINT**

any of these elements, including, as here, the required custodian title, a defined retention period, and meaningful law enforcement sharing restrictions, does not satisfy the statutory mandate and does not give California shoppers the "right to know" that the *Bartholomew* court identified as the Act's core protected interest. *Bartholomew v. Parking Concepts, Inc.,* No. A171546, slip op. at 9–10 (Cal. Ct. App. 1st Dist. Feb. 5, 2026), as modified Feb. 27, 2026. Indeed, the February 27, 2026, modification order expressly declined to address this theory, reserving "no opinion as to whether collecting and maintaining ALPR information with a usage and privacy policy that does not include every component identified in section 1798.90.51, subdivision (b)(2) would also cause such harm." *Id.* (modification order). This reservation confirms that the court recognized the question as distinct and viable; Plaintiffs submit that the answer is yes, and that the reasoning of *Bartholomew* compels it: a policy that facially omits mandatory disclosure elements provides the same informational deprivation, the same "violation of [the] right to know", as no policy at all. In more categorical phrasing, Home Depot's ALPR policy fails to comply with the ALPR Act in at least the following, material respects:

    a. **No Custodian Title (§ 1798.90.51(b)(2)(E)).** The statute requires identification of "the title of the official custodian, or owner, of the ALPR system responsible for implementing this section." Home Depot's policy identifies no such title. No job title, role, or position is designated as the ALPR custodian responsible for implementing the policy. This element is entirely absent.

    b. **No Defined Retention Period (§ 1798.90.51(b)(2)(G)).** The statute requires "the length of time ALPR information will be retained, and the process the ALPR operator will utilize to determine if and when to destroy retained ALPR information." Home Depot's policy states it will retain ALPR information "for as long as necessary for the Authorized Purposes." This circular, open-ended language provides no actual retention period, the very kind of non-answer the Legislature designed the statute to prohibit. The ALPR Act requires a defined timeframe, not a discretionary standard that effectively permits indefinite retention.

**CLASS ACTION COMPLAINT**

c. **Overbroad and Unrestricted Law Enforcement Sharing Clause (§ 1798.90.51(b)(2)(D)).** The statute requires disclosure of "the purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information." Home Depot's policy authorizes sharing with law enforcement for the purpose of "cooperating with law enforcement related to enforcement of laws and regulations," language so broad it has no limiting principle. The policy does not restrict sharing with out-of-state agencies, federal agencies, immigration enforcement agencies, or agencies not in the jurisdiction of the specific store where data was collected. The California Attorney General has expressly condemned unrestricted out-of-state data sharing as a violation of the ALPR Act.[16] This unlimited sharing clause is not a "restriction on" data sharing, it is an absence of any restriction.

d. **No Specific Training Requirements (§ 1798.90.51(b)(2)(B)).** The statute requires "a description of the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR system" and identification of "the training requirements necessary for those authorized employees and independent contractors." Home Depot's policy names departments (security, asset protection, IT, legal) but does not identify specific job titles or describe the substantive training requirements, no curriculum, no frequency, no duration, no content.

e. **Vague Monitoring Description (§ 1798.90.51(b)(2)(C)).** The statute requires "a description of how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws." Home Depot's policy

---

[16]John D. Marsh, Div. of L. Enf't, Cal. Dep't of Just., Info. Bull. 2023-DLE-06, *California Automated License Plate Reader Data Guidance,* at 1–2 (Oct. 27, 2023) [hereinafter AG ALPR Guidance], https://oag.ca.gov/system/files/media/2023-dle-06.pdf ("Accordingly, [the ALPR Privacy Act] does not permit California LEAs to share ALPR information with private entities or out-of-state or federal agencies, including out-of-state and federal law enforcement agencies."); *accord* Press Release, Off. of the Att'y Gen., Cal. Dep't of Just., *Attorney General Bonta Sues El Cajon for Illegally Sharing License Plate Data with Out-of-State Law Enforcement* (Oct. 3, 2025), https://oag.ca.gov/news/press-releases/attorney-general-bonta-sues-el-cajon-illegally-sharing-license-plate-data-out, (last visited Mar. 29, 2026).

**CLASS ACTION COMPLAINT**

states only that it will "periodically check" access records. "Periodically," with no defined frequency, methodology, responsible role, or process description, is not a "description of how" the system will be monitored.

f. **Insufficient Accuracy Measures (§ 1798.90.51(b)(2)(F)).** The statute requires "a description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors." Home Depot's policy states only that "Authorized Personnel will periodically compare license plate readings recorded and license plate images captured." "Periodically" is undefined. No process for correcting errors already shared with law enforcement is described. No mechanism for notifying affected individuals of misreads is identified.

30. In addition to its facial policy deficiencies, Home Depot's general Privacy and Security Statement, which its ALPR policy incorporates by reference, confirms that Home Depot collects and discloses to law enforcement "license plate number" as a category of identifier. The general privacy policy's data-sharing provisions are even broader than the ALPR-specific policy, authorizing disclosure to "law enforcement, public and government authorities, and other entities as we deem reasonably necessary to comply with law, support investigations, and protect the rights and property of you, us, and others." This general policy imposes no ALPR-specific restrictions whatsoever and does not satisfy the ALPR Act's specific, granular policy requirements.

## V.    FLOCK'S PATTERN OF UNAUTHORIZED DATA SHARING IN CALIFORNIA — CONFIRMING HOME DEPOT'S EXPOSURE

31. Multiple confirmed incidents across California, disclosed through mandatory audits and public records requests in late 2025 and early 2026, establish that Flock has systematically failed to maintain the access controls it promised its California customers, and that California ALPR data from private operators like Home Depot has been exposed to federal agencies and out-of-state law enforcement without authorization or notice.

///

///

**CLASS ACTION COMPLAINT**

A.      **The Mountain View Incident**

32.      In January 2026, the Mountain View Police Department ("MVPD") disclosed[17] that Flock had set MVPD's first deployed ALPR camera to a "nationwide" sharing setting without MVPD's permission or knowledge. As a result, between August and November 2024, MVPD's ALPR data was accessed by the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives; Langley Air Force Base in Virginia; the U.S. GSA Office of Inspector General; Lake Mead National Recreation Area in Nevada; and an Ohio Air Force Base. Flock could not determine whether these searches resulted in license plate information being shared, because Flock had not retained records for that period.

33.      The audit further revealed that a "statewide" search function was enabled on 29 of 30 deployed cameras, against the access controls MVPD believed it had established, allowing California law enforcement agencies not approved by MVPD to access its data. Mountain View's Police Chief Michael Canfield shut down the entire Flock network, stating: "The existence of access by out-of-state agencies, without the City's awareness, that circumvented the protections we purposefully built and believed were in place is frankly unacceptable to me and to the dedicated people of the MVPD." The City of Mountain View characterized this as "a system failure on Flock Safety's part."[18]

34.      Mountain View Mayor Emily Ann Ramos stated that the City Council had been given "a lot of assurances that we would have control over our data and who gets access to it, and it definitely would not be used by anyone in the federal government, and that clearly wasn't the case."[19]

///

///

---

[17] Katie Debenedetti, *As California Cities Grow Wary of Flock Safety Cameras, Mountain View Shuts Its Off,* KQED (Feb. 3, 2026) [hereinafter Debenedetti, *California Cities Grow Wary*], https://www.kqed.org/news/12072077/as-california-cities-grow-wary-of-flock-safety-cameras-mountain-views-shuts-its-off; *accord* Carlos E. Castaneda, *Northern California Police Chief Suspends Use of ALPR Cameras After Outside Agencies Access Data,* KION (Feb. 2, 2026), https://kioncentralcoast.com/news/top-stories/20260203/mountain-view-police-chief-suspends-use-of-alpr-cameras-after-feds-other-agencies-access-data. (last visited Mar. 29, 2026).

[18] *See* FN 17, *supra.; Carlos E. Castaneda, Northern California police chief suspends use of ALPR cameras after outside agencies access data, KION (Feb. 2, 2026).*

[19] *See* FN 17, *supra..*

- 19 -

**CLASS ACTION COMPLAINT**

## B.    The Ventura County Incident

35.    In February 2026, Ventura County Sheriff's Office disclosed[20] that an audit of its Flock system revealed that out-of-state agencies had accessed Ventura County's ALPR data more than 364,000 times between February and March 2025 without the department's approval or knowledge. Of those searches, 299 listed immigration enforcement as the justification, including reasons explicitly referencing ICE and immigration enforcement activities.

36.    Ventura County stated it had disabled Flock's "National Lookup" feature in June 2023 to comply with California law barring out-of-state data sharing. Nevertheless, the feature had been secretly re-enabled without the department's knowledge. Flock told Ventura County that "other agencies experienced similar issues," that it was "impossible to determine the specific cause," and that the re-activation could have been triggered by a Flock employee, a system bug, or someone at the Sheriff's Office. The Oxnard Police Department suspended Flock use entirely, with Chief Jason Benites stating: "We were disappointed when Flock Safety's shortcoming, the cause of which remains without explanation, allowed unauthorized data sharing. Proper guardrails must not only be in place, but they must work reliably."[21]

## C.    Implications for Home Depot's California ALPR Data

37.    The Mountain View and Ventura County incidents establish a documented pattern: Flock routinely configures or re-enables "nationwide" or "statewide" access settings on California customer systems without authorization, resulting in the exposure of California ALPR data to federal agencies. Home Depot, as a nationwide Flock customer with hundreds of California locations, is subject to the same systemic vulnerabilities. Home Depot's ALPR data from its California stores has been, and on information and belief continues to be, accessible to federal and out-of-state law enforcement through Flock's national network, beyond any sharing Home Depot explicitly authorized.

---

[20] Matthew Rodriguez, *Flock License Plate Readers Shared Data with Out-of-State Agencies, Ventura County Audit Finds,* CBS NEWS (Feb. 27, 2026), https://cbsnews.com/losangeles/news/flock-license-plate-readers-shared-data-with-out-of-state-federal-agencies-more-than-364000-times-between-february-and-march (last visited Mar. 17, 2026).
[21] *See* FN 20, *supra.*

**CLASS ACTION COMPLAINT**

38. Home Depot cannot disclaim responsibility by pointing to Flock's conduct. As the ALPR operator and end-user under California law, Home Depot bears the statutory obligation to implement and maintain compliant privacy and security policies, to restrict data sharing to authorized purposes, and to maintain access audit logs. Home Depot's failure to verify that its own vendor was complying with California law, and its affirmative choice to connect its California ALPR data to Flock's national sharing network, is itself a violation of the ALPR Act for which Home Depot is directly liable.

Rancho Cordova Home Depot Store No. 652



Huntington Beach Home Depot Store No. 6963







Concord Home Depot Store No. 634

Folsom Home Depot Store No. 6675

**CLASS ACTION COMPLAINT**

*Figure 5: Flock Safety national network data showing law enforcement access to private Flock camera networks including Home Depot locations. Individual searches can simultaneously access thousands of Flock camera networks nationwide.*

## VI.    HOME DEPOT'S FAILURE TO COMPLY WITH CALIFORNIA LAW

39.    Home Depot has failed to satisfy the core statutory requirements imposed by the ALPR Act on both ALPR "operators" and "end-users."

40.    **Non-Compliant ALPR Policy.** As analyzed in detail in Section III above, Home Depot's ALPR-specific usage and privacy policy fails to include at least three mandatory elements required by Cal. Civ. Code §§ 1798.90.51(b)(2) and 1798.90.53(b): no identified custodian title (§ (E)); no defined retention period (§ (G)); and an overbroad, unrestricted law enforcement sharing clause that fails to constitute a meaningful "restriction on" sharing as required by § (D). Under *Bartholomew*, the February 27, 2026 modification order expressly left open the question of "whether collecting and maintaining ALPR information with a usage and privacy policy that does not include every component" of § 1798.90.51(b)(2) also causes harm, confirming that Plaintiffs' theory is legally viable and unresolved in Defendants' favor.

41.    **No Reasonable Security Procedures**. Home Depot failed to maintain reasonable security procedures as required by Cal. Civ. Code §§ 1798.90.51(a) and 1798.90.53(a). Home Depot connected its California ALPR data to Flock's national law enforcement sharing network without implementing contractual or operational safeguards to prevent Flock from secretly re-enabling nationwide data-sharing settings, a pattern Flock repeatedly demonstrated across California agency installations in 2025 and 2026. Home Depot has not publicly announced the implementation of any safeguards to prevent federal or out-of-state access following the public disclosure of these incidents.

42.    **No Adequate Audit Records.** Home Depot's ALPR policy states it will "maintain and periodically check" access records, but "periodically" is undefined, the records are maintained through Flock rather than independently by Home Depot, and the Mountain View incident demonstrates that Flock itself failed to retain audit records for periods of unauthorized access, making it "impossible to determine" whether law enforcement searches resulted in license plate information

**CLASS ACTION COMPLAINT**

being shared. Home Depot's failure to independently maintain comprehensive audit records as required by Cal. Civ. Code § 1798.90.52(a) is a separate statutory violation.

43.    **Unauthorized Sharing.** Home Depot permitted its ALPR vendor to feed California ALPR data into a national network accessible to out-of-state and federal agencies without adequate restrictions, conduct the California Attorney General has expressly condemned as a violation of the ALPR Act. *See* AG Bonta Press Release, *Attorney General Bonta Sues El Cajon for Illegally Sharing License Plate Data with Out-of-State Law Enforcement* (Oct. 3, 2025); *Javorsky & Mayor v. Flock Group, Inc.*, No. CGC-26-634334 (Cal. Super. Ct. S.F. Cty. Feb. 26, 2026) (alleging Flock shared San Francisco ALPR data with out-of-state and federal agencies more than 1.6 million times in a seven-month period). Home Depot's broad law enforcement sharing clause, authorizing cooperation with "enforcement of laws and regulations" without restriction, is precisely the type of unlimited sharing authorization that enables the unauthorized federal and out-of-state access the Attorney General has condemned.

44.    **No Adequate Accuracy Measures.** Home Depot failed to implement adequate accuracy measures as part of its ALPR policy. § 1798.90.51(b)(2)(F). Flock's cameras are documented to misread license plates with troubling frequency.[22] A March 2026 *Business Insider* investigation reviewed police records, lawsuits, and local news coverage and found at least twelve documented instances where misreads by Flock's ALPR cameras, or a failure by officers to verify Flock alerts, resulted in innocent people being stopped at gunpoint, sent to jail, or subjected to a police dog attack. As early as 2021, an independent research firm found that Flock's cameras misidentified which state a license plate was from in approximately 1-in-10 reads. Home Depot's ALPR policy states only that personnel will "periodically compare license plate readings recorded and license plate images captured," with no defined frequency, no process for correcting data already transmitted to law enforcement, and no mechanism for notifying affected individuals. This is not a description of "reasonable measures" that satisfies the statute.

[22] Nicole Einbinder, *Flock Flocked Up*, Business Insider, (Mar. 9 2026), https://www.businessinsider.com/flock-safety-alpr-cameras-misreads-2026-3, (Mar. 29, 2026) .

**CLASS ACTION COMPLAINT**

45.    **Home Depot Knowingly Engaged in This Conduct.** The Home Depot, Inc. is the world's largest home improvement retailer with fiscal year 2025 revenues of approximately $164.7 billion, experienced legal and compliance departments, and sophisticated information technology and data governance infrastructure. Home Depot knew of California's ALPR Act; knew its vendor operated a national network actively searched by hundreds of law enforcement agencies; made a deliberate enterprise-level decision to deploy Flock cameras at its stores and share feeds with law enforcement; and published an ALPR-specific policy that omits mandatory statutory elements. After Flock's unauthorized data-sharing practices were publicly exposed in California in 2025 and 2026, including the Mountain View police chief shutting down Flock entirely and Ventura County documenting 364,000 unauthorized out-of-state accesses, Home Depot has not publicly announced any suspension of California ALPR operations, any modification of its Flock data-sharing settings, or any remediation of the identified deficiencies in its ALPR policy. This continued inaction in the face of known, publicly documented violations is the hallmark of willful and reckless disregard of California law, warranting punitive damages.

## VII.    HOME DEPOT'S KNOWING, WILLFUL, AND RECKLESS DISREGARD OF CALIFORNIA LAW

46.    Home Depot's violations of the ALPR Act are not the result of inadvertence, technical oversight, or good-faith misunderstanding of California law. They are the product of deliberate, informed corporate choices made with actual knowledge of the Act's requirements, and sustained in the face of mounting public evidence that those choices were causing harm to California residents. The following timeline establishes that Home Depot knew, or was willfully blind to, each element of its non-compliance.

### A.    Home Depot Knew the ALPR Act Existed and Applied to It

47.    The California ALPR Act has been in effect since January 1, 2016.[23] Home Depot U.S.A., Inc. operates 233 California retail stores, more than any other state in its portfolio, making California compliance a core legal obligation of its operations. The Home Depot, Inc. employs a Chief Privacy Officer, a dedicated privacy compliance team, and experienced legal counsel with

---

[23]Cal. Civ. Code § 1798.90.5 (eff. Jan. 1, 2016) (enacted by Stats. 2015, ch. 563 (S.B. 34), § 1)

**CLASS ACTION COMPLAINT**

responsibility for California consumer privacy law, including the CCPA/CPRA, the California Invasion of Privacy Act, and California's surveillance and data protection statutes. Home Depot's own publication of an ALPR-specific usage and privacy policy, separate from its general Privacy and Security Statement, is conclusive proof that Home Depot's legal team reviewed, analyzed, and made affirmative choices about the content of that policy. A corporation that affirmatively drafts and publishes an ALPR policy cannot claim ignorance of the statute that mandates it.

### B.    Home Depot Deliberately Omitted Mandatory Elements from Its Policy

48.    The three most critical omissions in Home Depot's ALPR policy: (1) the custodian title (§ 1798.90.51(b)(2)(E)); (2) the defined data retention period (§ (G)); and (3) meaningful law enforcement sharing restrictions (§ (D)), are not accidental gaps. They are the three elements that would impose the most significant operational accountability on Home Depot: identifying a responsible individual, committing to a deletion schedule, and limiting the scope of law enforcement access. Each omission reflects a calculated policy choice. Home Depot's privacy team knew these elements were required, the statute's text is unambiguous and chose either not to include them or to substitute legally meaningless language ("as long as necessary") that satisfies neither the letter nor the spirit of the mandate.

### C.    Home Depot Knew Its Vendor Was Sharing Data with Federal Agencies

49.    By no later than August 5, 2025, Home Depot had constructive knowledge that Flock Safety's national network was being used for broad law enforcement access to private retail camera feeds. On that date, 404 Media and the Electronic Frontier Foundation published a widely-reported investigation, based on public records obtained from the Johnson County, Texas Sheriff's Office, confirming that the Sheriff's Office had access to tap into Flock cameras "at dozens of Home Depot stores within Texas."[24] That report explicitly described the law enforcement sharing architecture Home Depot had enabled and identified Home Depot by name as a Flock customer whose camera

---

[24] Joseph Cox, *Home Depot and Lowe's Share Data from Hundreds of AI Cameras with Cops*, 404 Media (Aug. 5, 2025), 404media.co/home-depot-and-lowes-share-data-from-hundreds-of-ai-cameras-with-cops/. (last visited, Mar. 29, 2026).

**CLASS ACTION COMPLAINT**

feeds were accessible to law enforcement. Home Depot did not announce any suspension, modification, or review of its California ALPR operations in response.

**D.    Home Depot Knew Flock Was Secretly Re-Enabling Federal Access at California Sites**

50.    No later than February 3, 2026, Home Depot had actual knowledge of the specific, documented pattern of Flock secretly re-enabling nationwide data-sharing settings at California customer sites without authorization. On that date, Mountain View Police Chief Michael Canfield publicly announced that he was shutting down Mountain View's entire Flock network after discovering that out-of-state and federal agencies,  including the ATF, Langley Air Force Base, the GSA Office of Inspector General, and an Ohio Air Force Base, had accessed Mountain View's ALPR data without authorization.[25] Chief Canfield's statement was reported in KQED, KION, CBS San Francisco, and dozens of other California news outlets. Home Depot's legal and compliance teams, responsible for a multi-billion-dollar California retail operation with 233 stores connected to the same Flock national network, had access to this report. Home Depot did not announce any suspension or modification of its California Flock deployments in response.

**E.    Home Depot Knew of Documented Wrongful Detentions Caused by Flock Misreads**

51.    By no later than March 2026, Home Depot had actual knowledge that Flock ALPR misreads had caused at least twelve documented instances of innocent people being stopped at gunpoint, sent to jail, or subjected to police dog attacks.[26] This reporting, published by Business Insider in March 2026 after reviewing police records, lawsuits, and local news coverage across the country, expressly identified Flock as the technology Home Depot deployed at its stores. Home Depot's ALPR policy states only that personnel will "periodically compare license plate readings recorded and license plate images captured" to check for errors, a standard it knew, after March 2026,

---

[25] Katie Debenedetti, *As California Cities Grow Wary of Flock Safety Cameras, Mountain View Shuts Its Off*, KQED (Feb. 3, 2026), kqed.org/news/12072077/; Carlos E. Castaneda, *Northern California police chief suspends use of ALPR cameras after outside agencies access data*, KION (Feb. 2, 2026).
[26] Nicole Einbinder, *Flock Flocked Up*, Business Insider, (Mar. 9 2026), https://www.businessinsider.com/flock-safety-alpr-cameras-misreads-2026-3, (last visited, Mar. 29, 2026) .

**CLASS ACTION COMPLAINT**

was inadequate to prevent law enforcement from acting on Flock misreads at its own stores. Home Depot made no public announcement of accuracy remediation in response.

### F.    Home Depot Knew of the Flock Litigation Ecosystem

52.    By no later than February 26, 2026, Home Depot had constructive knowledge that California courts had recognized ALPR Act violations by private commercial entities as cognizable harm. On that date, *Bartholomew v. Parking Concepts, Inc.,* No. A171546, was decided by the California Court of Appeal, unanimously reversing a demurrer and holding that failure to implement a compliant ALPR policy is itself "harm" under § 1798.90.54.[27] On the same day, J*avorsky & Mayor v. Flock Group, Inc.,* No. CGC-26-634334, was filed in San Francisco Superior Court, naming Flock Safety directly for sharing California ALPR data with out-of-state agencies more than 1.6 million times.[28] On March 19, 2026, Linder & Hoffert v. Simon Property Group, Inc. was filed in Sacramento County Superior Court, naming America's largest mall operator for identical ALPR Act violations using the same Flock camera infrastructure.[29] Home Depot's legal team was on notice of each of these developments. Despite the Bartholomew decision eliminating its primary legal defense and companion litigation targeting its own vendor and a similarly situated retail co-defendant, Home Depot has not announced any remediation of its deficient ALPR policy, any suspension of California ALPR operations, or any notification to class members of their rights. This continued inaction in the face of known, publicly litigated violations constitutes the willful and reckless disregard of California law that warrants punitive damages under Cal. Civ. Code § 1798.90.54(b)(2) and Cal. Civ. Code § 3294.

### G.    The Home Depot, Inc.'s Enterprise Control Establishes Corporate Liability

53.    The knowing conduct described in this section is attributable to both Defendants. The Home Depot, Inc. is the parent corporation that sets and enforces enterprise-level privacy policy,

---

[27] *Bartholomew v. Parking Concepts, Inc.*, No. A171546 (Cal. Ct. App. 1st Dist. Feb. 5, 2026), *as modified* Feb. 27, 2026, available at courts.ca.gov/opinion/published/2026-02-05/a171546.

[28] *Javorsky & Mayor v. Flock Group, Inc.,* No. CGC-26-634334 (Cal. Super. Ct. S.F. Cty., filed Feb. 26, 2026); see Gibbs Mura / Milberg PLLC Press Release (Feb. 27, 2026)

[29] *Linder & Hoffert v. Simon Property Group, Inc.*, Sacramento County Superior Court (filed Mar. 19, 2026).

**CLASS ACTION COMPLAINT**

selects and contracts with vendors including Flock Safety, and directs the compliance standards that Home Depot U.S.A., Inc. executes at the store level. The ALPR-specific usage and privacy policy published on homedepot.com is a corporate policy of The Home Depot, Inc., not a store-level or divisional document, and was reviewed and approved by The Home Depot, Inc.'s legal and privacy teams before publication. The decision to include an open-ended law enforcement sharing clause, to omit a custodian title, and to define retention as "as long as necessary" was made at the enterprise level by The Home Depot, Inc. Both Defendants are therefore independently and jointly liable for the knowing, willful, and reckless conduct alleged throughout this Complaint.

## VIII. THE BARTHOLOMEW DECISION CONFIRMS THAT HOME DEPOT'S CONDUCT CONSTITUTES HARM

54.    On February 5, 2026, the California Court of Appeal, First Appellate District, Division Five, issued its unanimous decision in *Bartholomew v. Parking Concepts, Inc.*, No. A171546, authored by Acting Presiding Justice Mark B. Simons and joined by Justices Gordon B. Burns and Danny Y. Chou. The court issued a modification order on February 27, 2026.[30] Together, the opinion and modification order eliminate the primary legal challenge Home Depot is likely to raise, that Plaintiffs must plead affirmative misuse of ALPR data to establish harm, and leave open the theory directly applicable here.

55.    In *Bartholomew*, a private entity deployed ALPR cameras at a parking facility, the 1635 Divisadero Medical Center Parking Garage in San Francisco, without implementing or publicly posting an ALPR usage and privacy policy. The trial court sustained the defendant's demurrer, holding that the mere capture of a plaintiff's license plate could not establish "harm" under Cal. Civ. Code § 1798.90.54. The Court of Appeal unanimously reversed.

56.    Justice Simons held that "harm" under the ALPR Act does not require "any type of affirmative mishandling of the data." The court held:

> [W]hile the ALPR Law does not impose specific restrictions on the use of ALPR information, it grants individuals the right to know which entities are collecting their data and how it is being used and maintained. Collecting and maintaining individuals' ALPR information without implementing and making

---

[30] *Bartholomew v. Parking Concepts, Inc.,* No. A171546, order modifying opn. (Cal. Ct. App. 1st Dist. Feb. 27, 2026)

**CLASS ACTION COMPLAINT**

public the statutorily required policy harms these individuals by violating this right to know.

*Bartholomew v. Parking Concepts, Inc.,* No. A171546, slip op. (Cal. Ct. App. 1st Dist. Feb. 5, 2026), as modified Feb. 27, 2026.

57.    The court further held that "the provision of a set amount of liquidated damages demonstrates a legislative intent that cognizable harm does not require a measurable monetary injury." The $2,500 per-person liquidated damages provision confirms that the Legislature intended the failure to post a fully compliant policy, by itself, to be actionable.

58.    The February 27, 2026 modification order is particularly significant for this case. The court expressly declined to decide:

> We express no opinion as to whether collecting and maintaining ALPR information with a usage and privacy policy that does not include every component identified in section 1798.90.51, subdivision (b)(2) would also cause such harm.

This reservation confirms that the court recognized this as a distinct and unresolved question, one directly presented here, where Home Depot maintains a facially published ALPR policy that omits multiple mandatory elements, including a custodian title and defined retention period.

59.    *Bartholomew* is directly controlling here, and Home Depot's violations are more egregious than those at issue in *Bartholomew* in at least three respects. First, the *Bartholomew* defendant operated a single parking garage as a local operator; Home Depot is the world's largest home improvement retailer with 233 California locations and an enterprise-wide national Flock deployment.

60.    Second, the *Bartholomew* defendant had no documented history of enabling federal agency access; Home Depot's vendor has a documented, repeated pattern of secretly re-enabling nationwide access settings at California customer sites, exposing data to federal agencies without authorization.

61.    Third, and most significantly, *Bartholomew* involved a defendant with no policy at all, Home Depot has a policy that it published to satisfy the Act, yet that policy omits mandatory elements the Legislature specifically required. The February 27 modification order's reservation of the "incomplete policy" harm question is directly answered here: a policy that fails to identify a custodian,

**CLASS ACTION COMPLAINT**

fails to set a retention period, and fails to restrict law enforcement sharing does not give California shoppers the "right to know" the Act was designed to protect.

## IX.  HOME DEPOT'S ALPR PRACTICES ARE HIGHLY OFFENSIVE

62.  The California Legislature, in enacting the ALPR Act, recognized that ALPR data "can identify not only a person's exact whereabouts but also their pattern of movement" and can "chill First Amendment protected activity." The surveillance Home Depot has inflicted on shoppers at its 233 California stores is precisely what the Legislature sought to prevent.

63.  **First Amendment Surveillance.** Home Depot's ALPR data flows into the same Flock national network that the EFF documented was used to surveil protesters and political dissidents in 2025. Through analysis of twelve million Flock search records, the EFF found that more than 50 federal, state, and local agencies ran hundreds of searches connected to protests, including the No Kings protests of June and October 2025. Searches logged reasons as simple as "protest," "no kings,"[31] and "ATL No Kings Protest," with individual searches sweeping across thousands of camera networks simultaneously. U.S. Border Patrol searched the same network for "Portland Riots" and investigated a motorist who had "extended his middle finger"[32] at Border Patrol vehicles. By connecting its California store ALPR data to this national network, Home Depot made every California shopper's vehicle data available to agencies conducting mass, suspiciousless surveillance of First Amendment activity.

64.  **Immigration Enforcement**. Flock's national network has been used extensively for civil immigration enforcement. Documented instances include: a Texas law enforcement officer who searched Flock's nationwide network to locate a woman who had "had an abortion"; law enforcement

---

[31] Electronic Frontier Foundation, *How Cops Are Using Flock Safety's ALPR Network to Surveil Protesters and Activists* (Nov. 2025), eff.org/deeplinks/2025/11/how-cops-are-using-flock-safetys-alpr-network-surveil-protesters-and-activists; See also, *First Amendment Report,* HAVE I BEEN FLOCKED?, https://haveibeenflocked.com/first-amendment-records?sort=date:desc (last visited Feb. 19, 2026).

[32] Byron Tau & Garance Burke, *Border Patrol Is Monitoring US Drivers and Detaining Those with 'Suspicious' Travel Patterns,* ASSOCIATED PRESS (Nov. 20, 2025), https://www.ap.org/news-highlights/spotlights/2025/border-patrol-is-monitoring-us-drivers-and-detaining-those-with-suspicious-travel-patterns (last visited, Mar. 29, 2026).

**CLASS ACTION COMPLAINT**

agencies logging "ICE," "immigration," and "criminal alien" as search reasons; and federal agencies accessing California ALPR data to locate targets for immigration enforcement. Community members in multiple California cities have documented that Home Depot parking lot cameras are connected to systems accessible to ICE and used to monitor the movements of customers, including immigrant communities, day laborers, and others shopping at Home Depot for work supplies. The University of Washington Human Rights Center documented "front door," "back door," and "side door" access patterns by which federal agencies accessed local ALPR data regardless of whether the local agency had authorized such sharing. Home Depot's California ALPR data, fed directly into this national network, is not insulated from these uses.[33]

65.    **Inaccurate Data Triggering Wrongful Law Enforcement Action.** Home Depot failed to implement adequate accuracy verification measures. As a result, class members whose license plates were misread by Home Depot's Flock cameras are at risk of being wrongly placed on a law enforcement hot list, wrongly stopped at gunpoint, wrongly arrested, or wrongly detained based on a Flock misread. These are not speculative harms. At least twelve documented incidents across the country involved wrongful detentions at gunpoint, police dog attacks, and wrongful arrests caused by Flock ALPR misreads. Home Depot's failure to implement meaningful accuracy safeguards, while its ALPR data directly triggers law enforcement alerts across hundreds of California stores, exposes every class member to this risk.

66.    **Knowing, Willful, and Reckless Conduct.** Home Depot is the world's largest home improvement retailer with revenues of approximately $164.7 billion and experienced legal, compliance, and privacy departments. Home Depot chose Flock knowing that Flock operates the "nation's largest crime-solving LPR network" actively searched by hundreds of law enforcement agencies. Home Depot then published an ALPR policy with deliberate omissions, including no custodian title and no defined retention period, that are not oversights but reflect calculated policy

---

[33] *Leaving the Door Wide Open: Flock Surveillance Systems Expose Washington Data to Immigration Enforcement,* CTR. FOR HUM. RTS., UNIV. OF WASH. (Oct. 21, 2025), https://jsis.washington.edu/humanrights/2025/10/21/leaving-the-door-wide-open (last visited Mar. 17, 2026)

**CLASS ACTION COMPLAINT**

choices about accountability and data governance. After Flock's unauthorized data-sharing practices were publicly exposed in California in 2025 and 2026, Home Depot has not announced any suspension of California ALPR operations, any remediation of its deficient ALPR policy, or any modification of its Flock data-sharing settings. This continued inaction in the face of known violations is willful and reckless disregard of California law, warranting punitive damages.

## X.     Tolling Allegations

67.     *Fraudulent Concealment.* Home Depot actively concealed its non-compliant ALPR operations, deploying cameras covertly without adequate disclosure, maintaining a policy with deliberate omissions, and never notifying class members that their data was being shared with law enforcement through a national network. Plaintiffs and class members could not have discovered their claims through reasonable diligence prior to the public disclosure of Flock's unauthorized data-sharing practices in California, which began in January 2026.

68.     *Discovery Rule.* Because Home Depot did not provide the disclosures required by the ALPR Act, and because Flock cameras are mounted at parking lot entrances without any marking, signage, or disclosure identifying them as ALPR devices collecting and sharing data with law enforcement, the cause of action did not accrue until class members knew or reasonably should have known of the ALPR data collection and law enforcement sharing. Home Depot's affirmative failure to post any notice, combined with its vendor's practice of deploying cameras that are not labeled as ALPR systems, actively prevented class members from discovering their claims. For most class members, discovery was not reasonably possible before no earlier than January–February 2026, when the Mountain View Police Department's shutdown of its Flock network and the Ventura County audit disclosing 364,000 unauthorized out-of-state accesses received widespread coverage in KQED, CBS San Francisco, and other California news outlets accessible to a reasonable California consumer. *See* Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005) (under the discovery rule, limitations period does not begin until the plaintiff has reason to suspect an injury and some wrongful cause).

**CLASS ACTION COMPLAINT**

69.    *Class Action Tolling.* The filing of this complaint tolls the limitations period for all class members. *See American Pipe & Constr. Co. v. Utah,* 414 U.S. 538 (1974); *Jolly v. Eli Lilly & Co.,* 44 Cal. 3d 1103, 1119 (1988) ("the filing of a class action tolls the statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.

**PLAINTIFF SCHMIERER'S EXPERIENCE**

70.    Plaintiff William F. Schmierer is a natural person and a citizen of the State of California, residing in Orangevale, California. During the class period, Plaintiff visited The Home Depot store located in Rancho Cordova California (Store No. 652), in Sacramento County, on numerous occasions, including July 26, 2024, March 7, 2026, March 13, 2026, and March 16, 2026, where Plaintiff's vehicle was captured by ALPR cameras operated by Home Depot and/or its agents without notice adequate to satisfy California law, and without a publicly posted ALPR usage and privacy policy meeting all requirements of Cal. Civ. Code §§ 1798.90.51(b) and 1798.90.53(b).

71.    On each occasion, Plaintiff Schmierer did not observe any notice, signage, disclosure, or posting at the parking lot entrances or exits, on the Flock camera unit, or elsewhere on the property informing shoppers that their vehicle data was being captured by an automated license plate recognition system, stored in a searchable database, or shared with law enforcement agencies.

72.    Plaintiff Schmierer was not aware, and had no reasonable means of becoming aware, that Home Depot was operating an ALPR system at this location, that Plaintiff Schmierer's vehicle data was being captured and retained, or that Home Depot's ALPR usage and privacy policy omitted mandatory elements required by California law.

73.    Had Plaintiff Schmierer known that Home Depot was capturing and sharing his vehicle data with law enforcement through a national network, without a fully compliant ALPR usage and privacy policy under California law, Plaintiff Schmierer would not have patronized the store, or would have taken meaningful steps to protect his privacy, for example, by using an alternative entrance/exit not covered by an ALPR camera, or by avoiding the property altogether.

**CLASS ACTION COMPLAINT**

**PLAINTIFF AUSSEIKER'S EXPERIENCE**

74.     Plaintiff Mark Ausseiker is a natural person and a citizen of the State of California, residing in Fair Oaks, California. During the class period, Plaintiff Ausseiker visited The Home Depot store located in Folsom, California (Store No. 6675), in Sacramento County, California, on numerous occasions, including January 13 2026, where Plaintiff Ausseiker's vehicle was captured by ALPR cameras operated by Home Depot and/or its agents without notice adequate to satisfy California law, and without a publicly posted ALPR usage and privacy policy meeting all requirements of Cal. Civ. Code §§ 1798.90.51(b) and 1798.90.53(b).

75.     On each occasion, Plaintiff Ausseiker did not observe any notice, signage, disclosure, or posting at the parking lot entrances or exits, on the Flock camera unit, or elsewhere on the property informing shoppers that their vehicle data was being captured by an automated license plate recognition system, stored in a searchable database, or shared with law enforcement agencies.

76.     Plaintiff Ausseiker was not aware, and had no reasonable means of becoming aware, that Home Depot was operating an ALPR system at this location, that Plaintiff Ausseiker's vehicle data was being captured and retained, or that Home Depot's ALPR usage and privacy policy omitted mandatory elements required by California law.

77.     Had Plaintiff Ausseiker known that Home Depot was capturing and sharing his vehicle data with law enforcement through a national network, without a fully compliant ALPR usage and privacy policy under California law, Plaintiff Ausseiker would not have patronized the store, or would have taken meaningful steps to protect his privacy, for example, by using an alternative entrance/exit not covered by an ALPR camera, or by avoiding the property altogether.

**PLAINTIFF LINDER'S EXPERIENCE**

78.     Plaintiff Elzy Linder is a natural person and a citizen of the State of California, residing in Fair Oaks, California. During the class period, Plaintiff Linder visited The Home Depot store located in Rancho Cordova (Store No. 6675), California in Sacramento County, California, on numerous occasions, including October 29, 2025, February 4, 2026, and March 17, 2026 , where Plaintiff's vehicle was captured by ALPR cameras operated by Home Depot and/or its agents without

**CLASS ACTION COMPLAINT**

notice adequate to satisfy California law, and without a publicly posted ALPR usage and privacy policy meeting all requirements of Cal. Civ. Code §§ 1798.90.51(b) and 1798.90.53(b).

79. On each occasion, Plaintiff Linder did not observe any notice, signage, disclosure, or posting at the parking lot entrances or exits, on the Flock camera unit, or elsewhere on the property informing shoppers that their vehicle data was being captured by an automated license plate recognition system, stored in a searchable database, or shared with law enforcement agencies.

80. Plaintiff Linder was not aware, and had no reasonable means of becoming aware, that Home Depot was operating an ALPR system at this location, that Plaintiff Linder's vehicle data was being captured and retained, or that Home Depot's ALPR usage and privacy policy omitted mandatory elements required by California law.

81. Had Plaintiff Linder known that Home Depot was capturing and sharing his vehicle data with law enforcement through a national network, without a fully compliant ALPR usage and privacy policy under California law, Plaintiff Linder would not have patronized the store, or would have taken meaningful steps to protect his privacy, for example, by using an alternative entrance/exit not covered by an ALPR camera, or by avoiding the property altogether.

**PLAINTIFF HOPTON'S EXPERIENCE**

82. Plaintiff John Hopton is a natural person and a citizen of the State of California, residing in Huntington Beach, California. During the class period, Plaintiff Hopton visited The Home Depot store located in Huntington Beach (Store No. 6963), in Orange County, California, on May 19, 2025, August 9, 2025, August 17, 2025, November 24, 2025 and March 21, 2026, where Plaintiff Hopton's vehicle was captured by ALPR cameras operated by Home Depot and/or its agents without notice adequate to satisfy California law, and without a publicly posted ALPR usage and privacy policy meeting all requirements of Cal. Civ. Code §§ 1798.90.51(b) and 1798.90.53(b).

83. On each occasion, Plaintiff Hopton did not observe any notice, signage, disclosure, or posting at the parking lot entrances or exits, on the Flock camera unit, or elsewhere on the property informing shoppers that their vehicle data was being captured by an automated license plate recognition system, stored in a searchable database, or shared with law enforcement agencies.

**CLASS ACTION COMPLAINT**

84.    Plaintiff Hopton was not aware, and had no reasonable means of becoming aware, that Home Depot was operating an ALPR system at this location, that Plaintiff Hopton's vehicle data was being captured and retained, or that Home Depot's ALPR usage and privacy policy omitted mandatory elements required by California law.

85.    Had Plaintiff Hopton known that Home Depot was capturing and sharing his vehicle data with law enforcement through a national network, without a fully compliant ALPR usage and privacy policy under California law, Plaintiff Hopton would not have patronized the store, or would have taken meaningful steps to protect his privacy, for example, by using an alternative entrance/exit not covered by an ALPR camera, or by avoiding the property altogether.

**PLAINTIFF HARHAY'S EXPERIENCE**

86.    Plaintiff Michael J. Harhay is a natural person and a citizen of the State of California, residing in Lafayette, California. During the class period, Plaintiff Harhay visited The Home Depot store located in Concord (Store No. 634), in Contra Costa County, California, on May 27, 2025, May 29, 2025, May 31, 2025, June 13, 2025, August 12, 2025, August 17, 2025 and March 14, 2026, where Plaintiff Harhay's vehicle was captured by ALPR cameras operated by Home Depot and/or its agents without notice adequate to satisfy California law, and without a publicly posted ALPR usage and privacy policy meeting all requirements of Cal. Civ. Code §§ 1798.90.51(b) and 1798.90.53(b).

87.    On each occasion, Plaintiff Harhay did not observe any notice, signage, disclosure, or posting at the parking lot entrances or exits, on the Flock camera unit, or elsewhere on the property informing shoppers that their vehicle data was being captured by an automated license plate recognition system, stored in a searchable database, or shared with law enforcement agencies.

88.    Plaintiff Harhay was not aware, and had no reasonable means of becoming aware, that Home Depot was operating an ALPR system at this location, that Plaintiff Harhay's vehicle data was being captured and retained, or that Home Depot's ALPR usage and privacy policy omitted mandatory elements required by California law.

89.    Had Plaintiff Harhay known that Home Depot was capturing and sharing his vehicle data with law enforcement through a national network, without a fully compliant ALPR usage and

**CLASS ACTION COMPLAINT**

privacy policy under California law, Plaintiff Harhay would have taken meaningful steps to protect his privacy, for example, by using an alternative entrance/exit not covered by an ALPR camera, or by avoiding the property altogether.

## V.    CLASS ACTION ALLEGATIONS

90.    Plaintiffs bring this class action on behalf of themselves and all persons similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure and seek certification of the following class (hereinafter referred to as "the Class"):

> All individuals whose vehicles were captured by automated license plate reader systems operated or controlled by Home Depot U.S.A., Inc., The Home Depot, Inc., and/or their agents or vendors at any California retail store location, during the period beginning on the date Flock Safety ALPR cameras were first installed at California Home Depot properties and continuing through the present.

Excluded from the Class are Defendants and their respective officers, directors, employees, agents, affiliates, and subsidiaries; any judicial officer presiding over this matter and their immediate families and judicial staff; and any persons who timely opt out of the Class.

91.    Numerosity. The class is so numerous that individual joinder is impractical. Home Depot operates 233 California stores drawing millions of shopper visits annually. Based on documented traffic volumes at major retail home improvement stores, the class is estimated to include millions of individuals. The precise number will be ascertainable through discovery, including Defendants' and their vendor's ALPR database records.

92.    Ascertainability. ALPR systems operating at Home Depot's California stores maintain logs of every license plate scanned, including timestamps and locations. EFF's analysis of Flock audit records demonstrated that Flock's records identify the date, time, user, network, reason, and license plate for each search. These logs identify, at minimum, the license plate number associated with each class member's vehicle during each visit.

93.    Commonality and Predominance. Common questions of law and fact exist as to all class members and predominate over any individual issues, including:

a.    Whether Home Depot qualifies as an "ALPR operator" and/or "ALPR end-user" under Cal. Civ. Code § 1798.90.5;

**CLASS ACTION COMPLAINT**

b. Whether Home Depot's ALPR policy fails to include every mandatory element required by §§ 1798.90.51(b)(2) and 1798.90.53(b), including whether the absence of a custodian title, defined retention period, and meaningful law enforcement sharing restrictions renders the policy non-compliant;

c. Whether a non-compliant ALPR policy, one that is published but omits mandatory elements, causes "harm" within the meaning of § 1798.90.54, as the *Bartholomew* February 27, 2026, modification order expressly left unresolved;

d. Whether Home Depot failed to maintain required security procedures and audit records;

e. Whether Home Depot shared or permitted the sharing of California ALPR data with law enforcement agencies in a manner not authorized by a fully compliant ALPR policy;

f. Whether Flock's documented practice of secretly re-enabling nationwide access settings makes Home Depot liable for resulting unauthorized access under the ALPR Act;

g. Whether Home Depot's conduct was knowing, willful, and/or reckless; and

h. Whether Plaintiffs and the class are entitled to statutory and punitive damages and injunctive relief.

94. Typicality. Plaintiffs' claims are typical of those of the proposed class. All class members were subjected to Home Depot's uniform ALPR surveillance practices and Home Depot's uniform ALPR policy deficiencies across its California stores. All class members were harmed in the same manner and are entitled to the same statutory remedies.

95. Adequacy. Plaintiffs are adequate representatives of the class, their interests do not conflict with those of the class, they have retained counsel competent and experienced in ALPR and consumer class action litigation, and they intend to prosecute this action vigorously.

96. Superiority. A class action is superior to other available means for adjudicating this controversy. Individual class members lack the resources to individually pursue these claims;

- 38 -
**CLASS ACTION COMPLAINT**

individualized litigation would create inconsistent judgments; and the common factual and legal questions are best resolved in a single proceeding. The $2,500 per-person statutory damages are significant in aggregate but modest individually, making class treatment essential.

## VI.    CAUSES OF ACTION

### COUNT I
**Violation of California's ALPR Privacy Act**
**Civ. Code §§ 1798.90.5, *et seq.***
**Unauthorized Access and Use of ALPR Information**
*(By Plaintiffs, Individually and on Behalf of All Class Members, Against All Defendants)*

97.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

98.    Home Depot U.S.A., Inc. and The Home Depot, Inc. are each a "person" within the meaning of Cal. Civ. Code § 1798.90.5(e) as corporations.

99.    Home Depot qualifies as an "ALPR operator" within the meaning of Cal. Civ. Code § 1798.90.5(c). Home Depot deployed, owns, and controls the ALPR cameras at its California stores, contracted with Flock Safety as its ALPR vendor, configured access permissions for law enforcement, and made affirmative corporate decisions about how ALPR data would be shared. At all relevant times, Flock Safety acted as Home Depot's agent in operating the ALPR infrastructure on Home Depot's properties. Home Depot also qualifies as an "ALPR end-user" within the meaning of Cal. Civ. Code § 1798.90.5(a) to the extent it accesses, uses, or derives benefit from ALPR data generated at its California stores.

100.    Home Depot accessed and used "ALPR information" by capturing, storing, and sharing the license plate data, timestamps, and vehicle characteristics of Plaintiffs' and class members' vehicles at its California stores.

101.    As the California Court of Appeal confirmed in *Bartholomew*, collecting and maintaining individuals' ALPR information without implementing and making public a fully compliant policy constitutes "harm" within the meaning of § 1798.90.54. Plaintiffs and class members were harmed because Home Depot collected and used their ALPR information while maintaining a

**CLASS ACTION COMPLAINT**

policy that omits mandatory statutory elements, failing to give class members the "right to know" the Act was designed to protect.

102.    In addition, Home Depot authorized its ALPR vendor to expose California shoppers' data to federal and out-of-state law enforcement through Flock's national network without adequate restrictions and failed to implement any safeguards to prevent Flock from secretly re-enabling nationwide data-sharing settings. This constitutes additional, independent "unauthorized access to or use of ALPR information" within the meaning of § 1798.90.54.

103.    Plaintiffs and class members never authorized Home Depot to access or use their ALPR information in a manner inconsistent with a fully compliant ALPR policy.

104.    Home Depot's conduct was knowing, willful, and reckless, warranting punitive damages.

105.    Pursuant to § 1798.90.54(b), Plaintiffs and the class are entitled to: (1) actual damages, but not less than $2,500 per person; (2) punitive damages; (3) reasonable attorneys' fees and litigation costs; and (4) equitable relief.

**COUNT II**
**Violation of California's ALPR Privacy Act**
**Failure to Implement Code-Compliant Privacy Policy and Maintain Record of Access**
**Civ. Code §§ 1798.90.51(b), 1798.90.52, 1798.90.53(b)**
***(By Plaintiffs, Individually and on Behalf of All Class Members, Against All Defendants)***

106.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

107.    Home Depot violated Cal. Civ. Code §§ 1798.90.51(b)(2) and 1798.90.53(b) by failing to implement or publicly post an ALPR-specific usage and privacy policy meeting all required elements, including: (a) the title of the official ALPR custodian (§ (E)); (b) a defined data retention period and destruction process (§ (G)); (c) meaningful restrictions on law enforcement data sharing (§ (D)); (d) specific training requirements (§ (B)); (e) an adequate monitoring description (§ (C)); and (f) adequate accuracy measures (§ (F)).

108.    Home Depot violated Cal. Civ. Code §§ 1798.90.51(a) and 1798.90.53(a) by failing to maintain reasonable security procedures, including by: (a) connecting California store ALPR data

**CLASS ACTION COMPLAINT**

to Flock's national law enforcement sharing network without meaningful access restrictions; (b) failing to implement contractual or operational safeguards preventing Flock from secretly re-enabling nationwide data-sharing settings; and (c) failing to independently maintain audit records separate from its vendor.

109.    Home Depot violated Cal. Civ. Code § 1798.90.52(a) by failing to maintain adequate audit records of each ALPR system access.

110.    Home Depot violated Cal. Civ. Code § 1798.90.52(b) by permitting ALPR data to be used for purposes beyond any authorized use, including federal immigration enforcement, First Amendment protest surveillance, and out-of-state law enforcement investigations, through its unrestricted law enforcement sharing clause and Flock's national network.

111.    Home Depot violated Cal. Civ. Code § 1798.90.51(b)(2)(F) by failing to implement adequate accuracy measures, exposing class members to the risk of wrongful law enforcement stops and detentions based on Flock ALPR misreads.

112.    Under *Bartholomew*, failure to implement and publicly post a fully compliant policy constitutes harm under § 1798.90.54. The February 27, 2026, modification order expressly leaves unresolved whether a published but incomplete policy, precisely the situation here, causes equivalent harm.

113.    Plaintiffs and class members are entitled to liquidated damages of at least $2,500 per person, punitive damages, attorneys' fees, and injunctive relief.

**COUNT III**
**Invasion of Privacy Under California Constitution, Article I, § 1**
***(By Plaintiffs, Individually and on Behalf of All Class Members, Against All Defendants)***

114.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

115.    Article I, § 1 of the California Constitution ensures an inalienable right to privacy. Plaintiffs and class members have a legally protected privacy interest in their vehicle movements, travel patterns, and the data derived therefrom.

- 41 -
**CLASS ACTION COMPLAINT**

116.    Plaintiffs and class members had a reasonable expectation of privacy when visiting Home Depot's California stores. A reasonable person visiting a hardware store does not expect that their license plate data will be automatically captured, timestamped, stored in a national database, and made accessible to hundreds of law enforcement agencies, including federal immigration enforcement, all while the operator maintains a policy that omits mandatory disclosure elements and provides no meaningful restriction on who can access the data.

117.    Home Depot's conduct, deploying a pervasive ALPR surveillance network across 233 California stores, connecting it to a national law enforcement database, and maintaining a policy that fails to give class members meaningful notice of their rights, constitutes a serious invasion of privacy that is offensive and objectionable to any reasonable person. The systematic, covert capture and law enforcement sharing of the vehicle movements of millions of California residents shopping at a routine hardware store constitutes an egregious breach of social norms.

118.    Home Depot's invasion of privacy is sufficiently serious in nature, scope, and actual or potential impact to constitute an egregious breach of social norms warranting judicial relief:

- *Nature*: Pervasive capture and law enforcement sharing of vehicle movement data for every visitor to 233 California retail stores;
- *Scope:* Millions of class members across California's most populous counties;
- *Actual Impact:* Documented exposure to federal surveillance through Flock's national network, including federal immigration enforcement, First Amendment protest monitoring, and risk of wrongful detention based on ALPR misreads.

119.    As a result of Home Depot's conduct, Plaintiffs and class members have suffered harm to their privacy interests entitling them to damages, injunctive relief, and attorneys' fees.

## COUNT IV
### Intrusion Upon Seclusion
*(By Plaintiffs, Individually and on Behalf of All Class Members, Against All Defendants)*

120.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

- 42 -
**CLASS ACTION COMPLAINT**

121.    Home Depot intentionally intruded upon the solitude and seclusion of Plaintiffs and class members, and upon their private affairs and concerns, by deploying ALPR cameras at its California stores to systematically capture, record, and share their vehicle movement data without adequate notice or consent.

122.    Plaintiffs and class members had an objectively reasonable expectation that their vehicle movements and travel patterns at a routine hardware store would not be covertly captured and fed into a national law enforcement surveillance network accessible to federal agencies without meaningful restriction. The pervasive, suspicionless nature of the surveillance, every vehicle, every visit across 233 California stores, differentiates Home Depot's conduct from any legitimate security purpose and constitutes an intrusion into information that Plaintiffs and class members regarded as private.

123.    Home Depot's intrusion would be highly offensive to a reasonable person. The capture of vehicle movement data, its aggregation into profiles of shoppers' habits and lives, its disclosure to federal agencies conducting immigration enforcement and First Amendment surveillance, and its exposure through a vendor whose track record of unauthorized data-sharing is now publicly documented, all without adequate notice to the individuals being surveilled, is precisely the conduct California law and the California Constitution expressly condemn.

124.    Home Depot's likely argument, that license plates are visible in public and therefore subject to no reasonable expectation of privacy, does not defeat this claim.[34] The California Supreme

---

[34] *See also Carpenter v. United States,* 585 U.S. 296, 320 (2018) (holding that long-term aggregation of location data warrants Fourth Amendment protection because it "provides an intimate window into a person's life, revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations"; the Court expressly recognized that "seismic shifts in digital technology" require courts to look past whether each individual data point was "public"); *ACLU Foundation of Southern California v. Superior Court of Los Angeles County* (County of L.A.), 3 Cal. 5th 1032, 1056–57 (2017) (California Supreme Court recognized that mass indiscriminate ALPR data collection raises "serious privacy concerns" because aggregated records "reveal the schedule of the vehicle's registered owner and of those who live or work near where it is frequently parked," including "where a person lives, works, or frequently visits," and that such data could invade individual privacy — considerations the court held must be weighed against disclosure even for public agencies) (citation included for the aggregation-privacy principle, not the CPRA holding).

**CLASS ACTION COMPLAINT**

Court has recognized that the relevant question in an intrusion claim is not whether any single piece of information was publicly observable, but whether the *manner, scope, and aggregation* of the intrusion would be offensive to a reasonable person. *Hernandez v. Hillsides, Inc.,* 47 Cal. 4th 272, 286–87 (2009). The capture of a single license plate at a single moment is not what is alleged here. Home Depot operates ALPR cameras at 233 California stores, each capturing every vehicle's data at every visit — accumulating, over time, a longitudinal record of movement patterns, shopping habits, geographic associations, and daily routines that no member of the public would expect to be compiled and made available, in real time, to hundreds of law enforcement agencies across the country. As Justice Sotomayor recognized in *United States v. Jones,* 565 U.S. 400, 416 (2012) (Sotomayor, J., concurring), long-term aggregation of location data "generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations", a mosaic of intimate detail that the owner of any individual piece could never obtain. The ALPR Act itself was enacted on this precise understanding. *See* SB 34 Bill Analysis, ¶ 3 (2015) ("[t]he collection of a license plate number, location, and time stamp over multiple time points can identify not only a person's exact whereabouts but also their pattern of movement"). Plaintiffs' reasonable expectation of privacy is in the *aggregated profile*, not any single plate capture, and Home Depot's intrusion is into that aggregated profile.

125.    Unlike the defendant in *Bartholomew v. Parking Concepts, Inc.,* No. A171546 (Cal. Ct. App. 1st Dist. Feb. 5, 2026), which operated a single parking garage that patrons could choose to avoid, Home Depot operates 233 California retail stores selling hardware, home improvement supplies, and other everyday necessities for which there is no practical equivalent. For a significant portion of California residents, including those in counties where Home Depot is the predominant home improvement retailer, avoiding Home Depot's ALPR surveillance requires either foregoing ordinary purchases or traveling substantial distances to alternative retailers. This practical unavoidability distinguishes Home Depot's conduct from isolated, avoidable intrusions and satisfies the egregiousness threshold required under *Hernandez v. Hillsides, Inc.,* 47 Cal. 4th 272, 286–87 (2009). The pervasive, unavoidable, and suspicionless nature of the surveillance, combined with its

**CLASS ACTION COMPLAINT**

connection to federal law enforcement and its potential for misuse through ALPR misreads, is precisely the conduct that California law condemns. As a result of Home Depot's conduct, Plaintiffs and class members have suffered harm to their privacy interests entitling them to damages, injunctive relief, and attorneys' fees.

**COUNT V**
**Violations of California's Unfair Competition Law ("UCL")**
**Bus. & Prof. Code §§ 17200, *et seq.***
***(By Plaintiffs, Individually and on Behalf of All Class Members, Against All Defendants)***

126. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

127. The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Home Depot's conduct violates all three prongs.

128. *The Unlawful Prong.* Home Depot's violations of Cal. Civ. Code §§ 1798.90.51, 1798.90.52, and 1798.90.53, including the maintenance of an ALPR policy that omits mandatory elements, the failure to maintain adequate security procedures and audit records, and the unrestricted sharing of California ALPR data with law enforcement, each constitute independent unlawful predicate acts under the UCL.

129. *The Fraudulent Prong.* Home Depot failed to disclose material facts to shoppers and visitors, including that: (a) Home Depot deployed ALPR cameras capturing every visitor's vehicle data at each California store; (b) that data was being shared with and made accessible to law enforcement with no meaningful restriction on federal agencies or immigration enforcement; and (c) Home Depot's ALPR policy omits mandatory statutory elements that would have given class members meaningful information about their rights. These omissions were likely to deceive reasonable members of the public, who would not have patronized Home Depot had they known the full truth about Home Depot's surveillance practices and policy deficiencies.

130. *The Unfair Prong.* Home Depot's conduct is unfair because it offends the public policy codified in California's ALPR Act and the California Constitution; is immoral, unethical, and oppressive in its pervasive surveillance of ordinary California shoppers across 233 stores without a fully compliant policy; and causes substantial injury to class members, whose vehicle movement data

**CLASS ACTION COMPLAINT**

is aggregated, profiled, and exposed to federal law enforcement without the disclosure and restrictions the Legislature mandated, without any countervailing consumer benefit.

131.    Plaintiffs and class members lost money or property because they patronized Home Depot and made purchases there, receiving a transactional benefit diminished by the unlawful surveillance; they paid for a retail shopping experience without receiving the privacy protections mandated by California law, and would have shopped elsewhere or demanded compensation had they known of the non-compliant surveillance.

132.    Plaintiffs seek restitution, disgorgement of all unjust enrichment derived from Home Depot's unlawful ALPR practices, injunctive relief compelling full compliance with California law, and all other relief available under the UCL.

133.    As an additional predicate for the UCL unlawful prong, Home Depot's conduct violates the California Consumer Privacy Act, as amended by the California Privacy Rights Act of 2020, Cal. Civ. Code §§ 1798.100 *et seq*. (the "CPRA"). The Home Depot, Inc. is a "business" subject to the CPRA because it had annual gross revenues exceeding $25,000,000 in the preceding calendar year. Home Depot collects "personal information" within the meaning of Cal. Civ. Code § 1798.140(v)(1) through its ALPR systems, including vehicle identifiers, license plate numbers, location data, and timestamps, all of which can be linked to individuals. Home Depot's collection, retention, and sharing of this personal information without adequate disclosure, without providing consumers with a meaningful right to know the full scope of collection and third-party sharing, and without providing a right to limit sharing as required by §§ 1798.100 and 1798.120, constitutes an unlawful business act and practice under the UCL. This CPRA violation is independently actionable as a UCL predicate and is incorporated into Count V.

134.    Prospective injunctive relief is both necessary and appropriate and will not be rendered moot by any post-filing modification of Home Depot's ALPR policy. A policy update that merely adds boilerplate language nominally addressing the omitted elements, without verifying that the vendor's actual data-sharing practices comply, without terminating or modifying the national network architecture that exposes California data to federal agencies, and without establishing independent

**CLASS ACTION COMPLAINT**

audit and retention records separate from Flock's, would not provide class members with the substantive protection the ALPR Act requires. The harm alleged here is not merely textual policy non-compliance; it is the ongoing, systemic operation of a national surveillance network that connects California shoppers' vehicle data to federal law enforcement without the restrictions the Legislature mandated. Only an injunction requiring (i) immediate cessation of unauthorized sharing, (ii) implementation of independently verified, compliant policies, (iii) destruction of data collected during the non-compliance period, and (iv) independent auditing will provide the relief necessary to protect the class. *See* Cal. Civ. Code § 1798.90.54(b)(4) (authorizing "preliminary and equitable relief as the court determines to be appropriate"); Cal. Bus. & Prof. Code § 17203 (UCL injunctive relief).

<u>COUNT VI</u>
**Negligence And Negligence Per Se**
*(By Plaintiffs, Individually and on Behalf of All Class Members, Against All Defendants)*

135.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

136.    *Duty.* Home Depot owed Plaintiffs and class members a duty of reasonable care with respect to the collection, maintenance, security, and disclosure of their ALPR information. This duty arises from multiple independent sources:

    a.  **<u>Duty by Statute</u>**. California's ALPR Act, Cal. Civ. Code §§ 1798.90.5 *et seq.,* expressly imposes mandatory obligations on ALPR operators to maintain reasonable security procedures, implement a fully compliant usage and privacy policy, restrict data sharing to authorized purposes, and maintain access audit records. The Legislature enacted the ALPR Act for the benefit and protection of the class of persons to whom Plaintiffs and class members belong, California residents whose vehicle data is captured by ALPR systems. Home Depot, as an ALPR operator and end-user, owed a statutory duty of care to Plaintiffs and class members under the Act.

    b.  **<u>Duty by Undertaking.</u>** Home Depot undertook to deploy, operate, and govern an ALPR surveillance system at its California stores and published an ALPR-specific usage and privacy policy. Under California law, one who voluntarily undertakes to

**CLASS ACTION COMPLAINT**

perform a service for the benefit of another assumes a duty to perform that service with reasonable care. *See* Restatement (Second) of Torts § 324A; *Paz v. State of California*, 22 Cal. 4th 550 (2000). By publishing an ALPR policy and undertaking to comply with the Act, Home Depot assumed a duty to ensure that policy was complete, accurate, and fully compliant with all statutory elements, including the designation of a custodian title, a defined data retention period, and meaningful law enforcement sharing restrictions.

c. **Duty from Special Relationship.** Home Depot invites millions of members of the public onto its California premises as business invitees for the purpose of conducting commercial transactions. Home Depot owes business invitees a duty of care that encompasses the manner in which it collects and handles their personal data during and arising from those visits.

d. **Duty from Foreseeability.** It was objectively foreseeable that deploying Flock cameras connected to a national law enforcement sharing network, without a fully compliant ALPR policy, without adequate access restrictions, and with a vendor whose unauthorized data-sharing practices were publicly documented across California agencies, would harm the individuals whose vehicle data was captured. Home Depot knew or should have known that the Mountain View, Ventura County, and other California incidents created a foreseeable risk that its own California ALPR data would be exposed to unauthorized federal and out-of-state access, and that individuals whose plates were misread by Flock cameras faced foreseeable risk of wrongful law enforcement stops, detentions, and worse.

137. Negligence Per Se, Cal. Evid. Code § 669. Home Depot's violations of Cal. Civ. Code §§ 1798.90.51(b)(2)(B), (C), (D), (E), (F), and (G), specifically, its publication of an ALPR policy that fails to identify a custodian title, fails to define a data retention period, fails to impose meaningful restrictions on law enforcement sharing, provides inadequate training requirements, provides inadequate monitoring description, and provides inadequate accuracy measures, constitute negligence

**CLASS ACTION COMPLAINT**

per se under Cal. Evid. Code § 669. The ALPR Act was enacted to protect the specific class of persons harmed here, California residents whose vehicle data is captured by ALPR systems, from the specific kind of harm at issue here: unconsented covert surveillance, loss of the right to know how their data is used, and exposure of their movements and travel patterns to law enforcement agencies without their knowledge or consent. Home Depot's unexcused violation of the statutory standard of care is presumed negligent.

138.    *Breach.* Home Depot breached its duty of care to Plaintiffs and class members through the following acts and omissions, each of which fell below the standard of care imposed by the ALPR Act and applicable law:

    a. Publishing an ALPR usage and privacy policy that omits mandatory statutory elements, including a named custodian title and a defined data retention and destruction period, in violation of Cal. Civ. Code §§ 1798.90.51(b)(2)(E) and (G);

    b. Including a law enforcement sharing clause that imposes no meaningful restriction on federal agency access, out-of-state agency access, or immigration enforcement access, in violation of § 1798.90.51(b)(2)(D);

    c. Connecting California store ALPR data to Flock's national law enforcement sharing network without implementing contractual or operational safeguards to prevent Flock from secretly re-enabling nationwide data-sharing settings, a pattern Flock repeated at Mountain View Police Department, Ventura County Sheriff's Office, and other California agencies, in violation of § 1798.90.51(a);

    d. Failing to independently maintain comprehensive audit records of each instance of ALPR system access as required by § 1798.90.52(a), instead relying solely on Flock's records, which the Mountain View incident demonstrated may not be retained for periods of unauthorized access;

    e. Failing to implement adequate accuracy measures, providing only that personnel will "periodically compare license plate readings", with no defined frequency, no process

**CLASS ACTION COMPLAINT**

for correcting data already transmitted to law enforcement, and no mechanism for notifying individuals of misreads, in violation of § 1798.90.51(b)(2)(F).

139. *Causation.* Home Depot's breaches of duty directly and proximately caused harm to Plaintiffs and class members, including:

    a.   The capture, storage, and nationwide law enforcement exposure of their vehicle movement data without the full disclosure and restrictions required by California law;

    b.   Loss of their legally-protected right to know which entities are collecting their ALPR data and how it is being used and maintained, as recognized by the Court of Appeal in *Bartholomew v. Parking Concepts, Inc.,* No. A171546 (Cal. Ct. App. Feb. 5, 2026), as modified Feb. 27, 2026;

    c.   Exposure of their vehicle data to federal agencies, including immigration enforcement agencies, military installations, and federal inspector general offices, through Flock's national network, without authorization, consent, or adequate restrictions;

    d.   The foreseeable risk of wrongful law enforcement stops, detentions at gunpoint, arrests, and police dog attacks caused by Flock ALPR misreads, which Home Depot's negligent accuracy measures failed to prevent or remediate; and

    e.   The diminishment of the economic value of their personal vehicle data, which has been collected and shared without fair compensation or legally adequate disclosure.

140. *Damages.* As a direct and proximate result of Home Depot's negligent conduct, Plaintiffs and class members have suffered harm in an amount to be proven at trial, including actual damages, consequential damages, and such other damages as the Court deems just. To the extent California law limits the availability of economic damages absent a showing of data breach in the negligence context, Plaintiffs additionally plead their negligence claims in the alternative as to class members who suffered actual harm, including wrongful stops, detentions, arrests, or other law enforcement contacts, arising from Home Depot's negligent ALPR operation.

141. Home Depot's conduct was willful, oppressive, and malicious within the meaning of Cal. Civ. Code § 3294. Home Depot is the world's largest home improvement retailer with $164.7

**CLASS ACTION COMPLAINT**

billion in fiscal 2025 revenues and experienced legal, compliance, and privacy departments. Home Depot affirmatively published an ALPR policy while knowingly omitting mandatory statutory elements; continued to operate its California ALPR network after Flock's unauthorized data-sharing practices were publicly documented across multiple California agencies; and has not remediated its deficient ALPR policy or suspended California ALPR operations despite constructive knowledge of the ongoing violations. Plaintiffs seek punitive damages on this count.

## COUNT VII
### Violations Of California Consumer Privacy Act / California Privacy Rights Act
### Cal. Civ. Code §§ 1798.100, *et seq.*
### *(By Plaintiffs, Individually and on Behalf of All Class Members, Against All Defendants)*

142.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

143.    **Applicability.** The California Consumer Privacy Act, as amended by the California Privacy Rights Act of 2020 (collectively, "CPRA"), Cal. Civ. Code §§ 1798.100, *et seq.*, applies to The Home Depot, Inc. and Home Depot U.S.A., Inc. (collectively, "Home Depot") because:

a. Home Depot is a for-profit entity that "does business in the State of California";

b. Home Depot had annual gross revenues exceeding $25,000,000 in each preceding calendar year (fiscal year 2025 revenues of approximately $164.7 billion); and

c. Home Depot "buys, sells, receives, or shares for commercial purposes" the "personal information" of more than 100,000 consumers or households annually through its California stores.

144.    **ALPR Data is Personal Information Under the CPRA.** The ALPR information Home Depot collects at its California stores, including license plate numbers, vehicle make, model, and color, precise geolocation data (parking lot entrance/exit coordinates), and timestamps associated with individuals' visits — constitutes "personal information" as defined by Cal. Civ. Code § 1798.140(v)(1). Specifically:

a. License plate numbers linked to vehicle owners constitute "unique personal identifiers" under § 1798.140(v)(1)(A);

**CLASS ACTION COMPLAINT**

b.  Precise parking lot entry/exit coordinates and store visit timestamps constitute "geolocation data" under § 1798.140(v)(1)(G); and

c.  Inferences drawn from vehicle movement patterns (e.g., frequency of visits, times of day, co-location with other vehicles) that could be used to create a profile of a consumer constitute "inferences" under § 1798.140(v)(1)(K).

145.    **Home Depot's CPRA Violations.** Home Depot has violated the CPRA in the following independent respects:

a.  *Failure to Disclose at Collection (§ 1798.100(a)).* The CPRA requires a business to inform consumers, at or before the point of collection, of the categories of personal information collected and the purposes for which it will be used. Home Depot does not provide any notice at California store parking lot entrances, which are the point of collection of ALPR data, informing customers that their license plate, vehicle characteristics, and geolocation data are being collected. Home Depot's ALPR-specific policy is posted only on its website, not at the point of collection, and even the website policy fails to disclose the full scope of law enforcement sharing to which the data is subject.

b.  *Failure to Provide Right to Know (§ 1798.110).* The CPRA entitles California consumers to know the specific pieces of personal information a business has collected about them, the categories of sources from which personal information was collected, the business or commercial purpose for collecting the information, and the categories of third parties with whom the business shares personal information. Home Depot has failed to implement an adequate mechanism for California consumers to exercise this right with respect to ALPR data, and its privacy disclosures do not adequately identify law enforcement agencies as a category of third party with whom ALPR data is shared.

c.  *Failure to Provide Right to Limit Use of Sensitive Personal Information (§ 1798.121).* Precise geolocation data is expressly designated as "sensitive personal information" under Cal. Civ. Code § 1798.140(ae)(1)(G). The CPRA grants consumers the right to

**CLASS ACTION COMPLAINT**

direct a business to limit its use of sensitive personal information to that which is reasonably necessary to perform the services expected by an average consumer. Home Depot uses California shoppers' precise parking lot location data, sensitive personal information under the statute, to feed a national law enforcement surveillance network accessible to federal agencies for purposes well beyond what a reasonable consumer visiting a hardware store would expect. Home Depot has not provided consumers with the required mechanism to limit this use.

d. *Failure to Provide Right to Delete (§ 1798.105).* The CPRA entitles California consumers to request deletion of personal information collected about them. Home Depot's ALPR policy provides no mechanism for California shoppers to request deletion of their ALPR data and does not disclose that such a right exists with respect to ALPR information. Because Home Depot has made that data available to law enforcement through Flock's national network, where it may have been further retained by law enforcement agencies, Home Depot's failure to implement a meaningful deletion process means class members have no practical mechanism to exercise their statutory right.

e. *Non-Compliant Privacy Notice (§ 1798.130(a)(5)).* The CPRA requires a privacy notice that discloses, among other things, the categories of personal information collected, the purposes for collection, and the categories of third parties with whom information is shared. Home Depot's general privacy statement acknowledges ALPR collection in general terms but does not identify law enforcement agencies as a category of "third parties" with whom ALPR data is shared or sold, does not identify Flock Safety as a service provider through whom ALPR data is processed and made accessible to law enforcement, and does not provide the specific disclosure of "sensitive personal information" categories (including precise geolocation) required by the CPRA.

**CLASS ACTION COMPLAINT**

146.    **Harm.** As a direct result of Home Depot's CPRA violations, Plaintiffs and class members have been denied their statutory rights to know, delete, and limit the use of their personal information, including sensitive geolocation data, that is being collected and shared by Home Depot at its California stores. Plaintiffs and class members have suffered injury in fact, including invasion of their legally protected privacy interests, and have lost money or property through the unconsented collection and commercial exploitation of their personal information without fair compensation or legally adequate disclosure.

147.    **UCL Predicate.** Each of the CPRA violations alleged in this Count constitutes an independently "unlawful" business act and practice under the UCL, Cal. Bus. & Prof. Code § 17200. Plaintiffs additionally seek all relief available under the UCL, including restitution, disgorgement, and injunctive relief, predicated on Home Depot's CPRA violations.

148.    Plaintiffs seek: (a) injunctive relief requiring Home Depot to comply with all applicable CPRA obligations with respect to ALPR data; (b) restitution and disgorgement of the value Home Depot derived from collecting and sharing Plaintiffs' and class members' personal information without CPRA-compliant notice and disclosures; (c) an order requiring Home Depot to delete all ALPR personal information collected in violation of the CPRA; and (d) attorneys' fees, costs, and all other relief available under the UCL and applicable law.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all class members, respectfully request that the Court:

a.    Certify this action as a class action on behalf of the proposed Class, appointment of Plaintiffs as class representatives, and appoint Plaintiffs' counsel as class counsel;

b.    Declare that Home Depot has violated California's ALPR Privacy Act, Cal. Civ. Code §§ 1798.90.5 *et seq.*;

c.    Award actual damages, or not less than statutory liquidated damages of $2,500 per person per violation, pursuant to Cal. Civ. Code § 1798.90.54(b)(1);

**CLASS ACTION COMPLAINT**

d.  Award punitive damages pursuant to Cal. Civ. Code § 1798.90.54(b)(2) based on Home Depot's knowing, willful, and reckless disregard of California law;

e.  Enter a permanent injunction requiring Home Depot to:

    i.  Immediately cease sharing California ALPR data with any law enforcement agency not authorized by a fully compliant ALPR usage and privacy policy that satisfies all elements of Cal. Civ. Code §§ 1798.90.51(b)(2) and 1798.90.53(b), including restrictions on out-of-state and federal agency access;

    ii.  Implement and conspicuously post a fully compliant ALPR-specific usage and privacy policy, including a named custodian title, defined data retention period, and meaningful law enforcement sharing restrictions, at each California store location and on Home Depot's website;

    iii.  Delete all California ALPR data collected during the period of non-compliance, except as required by law;

    iv.  Terminate or modify any ALPR vendor relationship that does not permit Home Depot to independently maintain and verify access controls, audit records, and restrictions on federal and out-of-state data sharing consistent with California law

    v.  Submit to independent audit of its ALPR data practices and vendor compliance for a period of not less than three (3) years following entry of judgment; and

    vi.  Post conspicuous notice at all California store parking lot entrances informing visitors that ALPR cameras are in use, the identity of the ALPR operator, and the URL of a compliant usage and privacy policy;

f.  Award restitution and disgorgement of any unjust enrichment Home Depot derived from its unlawful ALPR practices;

g.  Award prejudgment interest on all amounts awarded;

h.  Award Plaintiffs and the class their reasonable attorneys' fees and litigation costs under applicable law, as well as pursuant to Cal. Civ. Code § 1798.90.54(b)(3); and

i.  Grant such other and further relief as this Court deems just and proper.

- 55 -

**CLASS ACTION COMPLAINT**

j.  Award damages, restitution, disgorgement, and injunctive relief for Home Depot's violations of the California Consumer Privacy Act / California Privacy Rights Act, Cal. Civ. Code §§ 1798.100 et seq., as alleged in Count VII, including an order requiring Home Depot to: (i) provide CPRA-compliant notice of ALPR data collection at the point of collection at California store parking lot entrances; (ii) implement a mechanism for consumers to exercise rights to know, delete, and limit use of their ALPR personal information; and (iii) delete all ALPR personal information collected in violation of the CPRA;

k.  Award compensatory and punitive damages for Home Depot's negligence and negligence per se as alleged in Count VI, including damages for actual harm suffered by class members who experienced wrongful law enforcement contacts arising from Flock ALPR misreads attributable to Home Depot's failure to implement adequate accuracy measures

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable.

Dated:  May 1, 2026                              Respectfully Submitted,

**EMERY | REDDY, PC**

By: */s/M. Anderson Berry*
M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
600 Stewart Street, Suite 1100
Seattle, WA 98101
916.823.6955 (Tel)
206.441.9711 (Fax)
anderson@emeryreddy.com
gregory@emeryreddy.com
brandon@emeryreddy.com

Heather M. Lopez (SBN 354022)
Mike Acciavatti*
**MILBERG PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212

- 56 -
**CLASS ACTION COMPLAINT**

Phone: (331) 240-3015
hlopez@milberg.com
macciavatti@milberg.com

*pro hac vice* forthcoming

*Attorneys for Plaintiff and the Proposed Class*

**CLASS ACTION COMPLAINT**